Donald CHESAK and Jeannie Chesak,
Defendants–Appellants,

v.

NORTHERN INDIANA BANK AND
TRUST COMPANY,
Plaintiff–Appellee.

No. 75A03–8908–CV–360.

Court of Appeals of Indiana,
Third District.

March 21, 1990.

Martin R. Lucas, North Judson, for defendants-appellants.

Glenn S. Vician, Borns, Quinn, Heintz, Bowman & McPhee, P.C., Merrillville, for plaintiff-appellee.

GARRARD, Judge.

Donald and Jeannie Chesak appeal the entry of summary judgment in favor of Northern Indiana Bank and Trust Co. (Northern). Northern sued the Chesaks on a note Donald made and Jeannie guaranteed. We affirm the entry of summary judgment yet remand for a hearing on damages.

On November 20, 1985 Donald signed a note promising to repay Northern $7752 plus interest accruing at 17.001% over a two year period. Including credit life insurance premiums, Donald was to pay $383.28 per month for a total sum of $9198.72. Donald gave a security interest in his 1980 Oldsmobile Regency.

Donald apparently defaulted on the note. The parties began negotiating a settlement of the matter in the spring of 1987. In July, Northern agreed to accept $1000 provided that the bank received it in cash by July 31. On July 30, the Chesaks wrote to Northern enclosing partial payment in the amount of $500.00. Northern cashed the check and responded in a letter dated August 6 that partial payment was accepted with the stipulation that the remaining balance of $500.00 be paid no later than September 15, 1987. The Chesaks failed to remit that amount.

On November 13, 1987 Northern filed suit on the note seeking $6160.35 plus interest and attorney fees. Cross motions for summary judgment were filed. Northern argued that the Chesaks' failure to pay the $500.00 balance effected a cancellation or revocation of the July agreement, so Northern was free to sue on the original obligation. The Chesaks countered arguing that the settlement agreement barred an action on the note, so Northern was limited to recovering the $500.00 balance plus costs. The record reflects that the parties' attorneys entered into an oral stipulation that no material facts were in dispute. The trial court entered summary judgment for Northern in the amount requested, $6160.35, plus interest and attorneys' fees in an amount to be determined.

The Chesaks' appeal presents two issues: (1) whether the trial court erred when it granted Northern summary judgment based on the conclusion that no enforceable accord and satisfaction existed between the parties, and (2) whether the evidence presented to the court in the summary judgment materials revealed unresolved questions of fact regarding Northern's damages such that summary judgment was inappropriate.

## DISCUSSION

While the facts pertinent to a resolution of the contractual questions are not in dispute, the facts relative to Northern's damages are. We note that suit was filed on the note alleging that the Chesaks owed

$6160.35, yet during the negotiations stage of this dispute the bank represented the sum to be $6135.10. Moreover, in Northern's affidavit in support of summary judgment, that sum is represented to be $5660.35. Finally, nowhere does Northern indicate that the Chesaks received any credit, even against accrued interest, for the $500.00 they paid to Northern on July 30. These discrepancies were highlighted for the court in the Chesaks' affidavit. The stipulation the parties entered into apparently pertained only to the facts relative to the contractual issues of this case. That is, we find untenable Northern's argument that the Chesaks are bound on the issue of damages by the bare, oral stipulation that no facts are in dispute when the bank's own various documents are in discord as to the amount owed. As discussed below, we find that the trial court correctly entered summary judgment on the issue of liability on the note [1]; nonetheless, we remand the cause for a redetermination of Northern's damages.

We turn now to the Chesaks' argument that Northern is barred from suing on the original obligation by the parties' "accord and satisfaction" or "compromise and settlement." The difference between these two contractual doctrines is as "shadowy" today as it was when our supreme court labelled it so in *Indiana Farmers Mut. Ins. Co. v. Walters* (1943), 221 Ind. 642, 649, 50 N.E.2d 868, 870. We, nonetheless, consider it unnecessary to exhaustively explore the respective nuances of these contractual doctrines. An "accord" is an agreement between debtor and creditor where the creditor accepts a lesser sum in lieu of a greater liquidated or unliquidated amount while a "compromise" is similar except that the term may refer to real estate disputes but is used only where the

claim is in dispute. *See* 1 Am.Jur.2d *Accord and Satisfaction* § 2 (1962). The "satisfaction" and "settlement" aspects of the respective doctrines refer to the performance of the agreement.[2] *See* 1 Am. Jur.2d *Accord and Satisfaction* § 1 (1962). *See also Black's Law Dictionary* 16 (5th ed. 1979). *Contra Shelby Fed. Sav. & Loan Ass'n. v. Doss* (1982), Ind.App., 431 N.E.2d 493, 498.

In *Walters* the court noted that those cases mistakenly cited by the appellant insurer in support of its position actually stood for a proposition accepted by the court that:

> . . . an accord not followed by satisfaction was not a bar [to suit on the original claim]. By refusing or failing to pay the agreed amount, be it called an accord or a compromise, the obligor is in no position to complain if the obligee abandons the compromise and resorts to his original cause of action.

*Walters, supra,* 221 Ind. at 649, 50 N.E.2d at 870–71. *See also* 1 Am.Jur.2d *Accord and Satisfaction* § 47. The Chesaks have admitted [3] that their accord with Northern was not satisfied, so they are in no position to complain regarding the bank's resort to suit on the note. *Jackson v. Olmstead* (1882), 87 Ind. 92, 94 ("an accord can not constitute a bar, or complete defence, unless shown to have been fully executed.")

The parties and the trial court grappled with the common law rule referred to in *Daube and Cord v. LaPorte Cty. Farm Bureau* (1983), 454 N.E.2d 891, 893 that "where a debt is liquidated, partial payment has been held insufficient to cancel the entire liability." We note that that approach, as based upon the operation of the pre-existing duty rule and upon a his-

---

1. In an appeal from the entry of summary judgment, we apply the same standard as applied by the trial court and we thus are not bound by the trial court's rationale. *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 567.

2. Should the accord, a substituted contract, be a unilateral contract where the creditor promises to accept a lesser amount for the debtor's payment (as opposed to promising to accept a lesser amount in exchange for the debtor's promise to

pay that sum), then the otherwise distinct agreement and performance aspects of an accord and satisfaction converge in time.

3. The existence of an accord and satisfaction is ordinarily a question of fact, but, where those facts are undisputed, the question is one of law. *See Nardine v. Kraft Cheese* (1944), 114 Ind.App. 399, 403, 52 N.E.2d 634, 635.

torically restrictive definition of consideration, has fallen into disfavor in some courts. 1 Am.Jur.2d *Accord and Satisfaction* § 13. In cases such as this where the accord allows the creditor to recover in cash promptly and without collection proceedings a portion of a long overdue liquidated debt and thereby clear its books of the account, we cannot say that the creditor has received no consideration. That is, the creditor has determined that the benefits of such an arrangement outweigh the costs, both direct and indirect, of pursuing the claim to judgment and attempting to collect thereon. Those benefits are sufficient consideration to support an accord and, indeed, would have been sufficient here to bar Northern from suing on the note had this accord been satisfied.

 Next, we turn to the Chesaks' argument that Northern cannot treat the contractual accord as rescinded because Northern, as the party seeking rescission, has not returned the benefits received thereunder (the $500.00) to the Chesaks so as to restore the pre-contract status quo. The Chesaks misapprehend the consequences and nature of the failure to satisfy.

Northern offered a unilateral contract. That is, it offered to accept a lesser sum if paid by a certain date. Chezaks could accept only by performing and that they failed to do. There was, therefore, no contract created and no issue concerning rescission existed.

Northern's entitlement to the $500 arose from the antecedent debt. It was only necessary that the amount paid be credited to the debtor's account. *See* 1 Am.Jur.2d *Accord and Satisfaction* § 25.

Stated from a different perspective, the only contract existing between Northern and Chesaks was the original note and that agreement was not rescinded.

This case may be summarized as follows: Northern loaned the Chesaks money which they did not repay. Northern then agreed to accept $1000 cash by July 31, 1987 in lieu of pursuing an action for the full amount. The Chesaks could only accept that contract (the accord) by paying the money (the satisfaction). This they did not

do, so there was no accord and satisfaction. Then the Chesaks offered $500.00 and implicitly promised to pay the balance within a reasonable time. Northern countered with an offer to accept $500.00 July 30 and the balance by September 15. Again, the only way that the Chesaks could accept that offer of a unilateral contract was by paying the money by September 15. They failed to do so. Consequently, the parties again had no accord and satisfaction. Accordingly, Northern was free to sue on the note. All Northern gained throughout these dealings was $500.00 that it was entitled to anyway. The Chesaks are, of course, due a credit for that amount.

The entry of summary judgment is affirmed. The cause is remanded for a redetermination of the sum due Northern on the note.

Affirmed in part and remanded.

HOFFMAN, P.J., and BUCHANAN, J., concur.