Ralph REED, Kay Reed, R. Jeffrey Reed, and Mark Reed, Individually and d/b/a Ralph Reed and Son, Inc., and Reed Equipment, Inc. Defendants–Appellants,

v.

John DILLON, Indiana Insurance Commissioner, as Liquidator of Guard Casualty and Surety Insurance Company, Plaintiff–Appellee.

No. 49A02–9006–CV–355.[1]

Court of Appeals of Indiana,
Fifth District.

Feb. 13, 1991.

Seth Thomas Pruden, Mark C. Bainbridge, Bamberger & Feibleman, Indianapolis, for defendants-appellants.

Caryl Forsythe Dill, Indianapolis, for plaintiff-appellee.

SHARPNACK, Judge.

Defendants Ralph Reed, Kay Reed, R. Jeffrey Reed, Mark Reed, Ralph Reed and Son, Inc., and Reed Equipment, Inc. (hereinafter collectively, "defendants") appeal the trial court's entry of summary judgment in favor of plaintiff, the Indiana Insurance Commissioner as liquidator of Guard Casualty and Surety Insurance Company. Because we find that genuine issues of material fact remain for determination by the finder of fact, we reverse.

The corporate defendants in this action, Ralph Reed and Son, Inc. and Reed Equipment, Inc., contracted to construct sewers for a number of municipalities. Plaintiff's predecessor, Guard Casualty & Surety Insurance Co. of Indianapolis, issued twelve bonds in connection with these construction projects. These bonds guaranteed the performance of the construction contracts as well as the labor and material payments to be made in connection with the contracts. The various defendants, both individual and corporate, agreed to indemnify Guard against any losses which it might sustain due to the corporate defendants' failure to perform their obligations under the construction contracts.

The corporate defendants failed to perform, and plaintiff alleged that Guard was forced to pay out a total of $209,179.45 on its bond obligation. Some time after Guard paid out these funds, it went into liquidation.

Before Guard went into liquidation, its attorney, Grover B. Davis, entered into negotiations with representatives of the defendants in an attempt to recover some of the money which Guard had paid out due to defendants' contractual defaults. During the course of these negotiations, Davis wrote the following letter to a representative of the defendants:

Ronald W. Buchmeier, Esquire
500 Union Federal Building
Indianapolis, Indiana 46204
Re: Ralph Reed & Sons, Inc.
Dear Ron:

This letter will confirm our telephone conversations on February 3, 1984, regarding the Anderson Project and Springmill Lane Project.

We have conditionally agreed that Guard Casualty & Surety Insurance Company would receive an additional $10,000 from the exchange for which Guard Casualty & Surety would release Ralph Reed and his sons from the General Agreements of Indemnity. This Agreement is conditioned upon the following:

1. The actual receipt of Guard Casualty & Surety Insurance Company of the $10,000 free and clear of claims and liens;

2. The receipt of Guard Casualty & Surety Insurance Company of audited personal financial statements from Ralph Reed and his two sons who are being released; and

3. Guard Casualty & Surety's investigation of the assets of the persons to be released.

I would appreciate your signing a copy of this and returning it to me if this is in compliance with our conversations.

Sincerely,
McClure, McClure & Kammen
GROVER B. DAVIS,
Attorney at Law

After Guard went into liquidation, the insurance commissioner, acting as liquidator, filed this action to recover the amounts which Guard paid out on the bonds, less credit for certain sums received from the Anderson, Indiana sewer project.

The defendants appeared and filed an Answer in which they admitted that they had defaulted on the construction contracts and that, because of their default, Guard suffered losses on the bonds which it issued. The defendants further admitted that they had agreed to indemnify Guard for the losses which it suffered due to their failure to perform their obligations under the construction contracts. The defendants, however, raised the affirmative defense of accord and satisfaction.

On November 22, 1988 the defendants filed with the court a response to plaintiff's motion for production of documents[2]. In its motion, the plaintiff had requested that the defendants produce any documents upon which they were relying in order to establish their defense of accord and satisfaction. The defendants produced the Grover Davis letter. On June 2, 1989, the plaintiff filed a motion to strike defendants' response to its request for production, and, on June 6, 1989, the court ordered the Grover Davis letter stricken from the record.

Some four and one-half months later, on October 27, 1989, the plaintiff filed a motion for summary judgment with supporting affidavit. The defendants filed their response to the motion for summary judgment on October 31, 1989. Appended to defendants' response was an affidavit executed by Ralph Reed and a copy of the Grover Davis letter, which was attached as an exhibit to the Reed affidavit. On November 7, 1989, the plaintiff filed a reply brief in support of its motion for summary judgment. The defendants filed a rebuttal to plaintiff's reply brief on November 13, 1989. On January 19, 1990, the trial court granted plaintiff's motion for summary judgment as follows:

Comes now the plaintiff, by counsel, Caryl Forsythe Dill, and come now the defendants, by counsel, Seth T. Pruden, upon the plaintiff's Motion for Summary Judgment filed herein, which motion in the words and figures following, to-wit:

(H.I.)

And this cause having been submitted to the Court for finding, and the Court being duly advised in the premises, now finds that the allegations of the plaintiff's complaint are true, and there being no issue of material facts, now finds for the plaintiff and against the defendants, Ralph Reed, Kay Reed, J. Jeffrey Reed, and Mark Reed, individually, and d/b/a Ralph Reed and Son, Inc. and Reed Equipment, Inc., and finds the plaintiff is entitled to a judgment in the following sums:

| | |
|---|---|
| Unpaid principal | $202,245.01 |
| Interest at 10% per annum from the date of payment of the bonds to October 31, 1989 | 121,333.37 |
| Interest at 10% per per annum from November 1, 1989 through January 17, 1990 | 4,213.44 |
| Attorney fees and costs | 2,000.00 |
| | $329,791.81 |

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court that the plaintiff recover of and from the defendants, Ralph Reed, Kay Reed, J. Jeffrey Reed, and Mark Reed, individually, and d/b/a Ralph Reed and Son, Inc. and Reed Equipment, Inc., the sum of Three Hundred Twenty–Nine Thousand Seven Hundred Ninety–One Dollars and Eighty-One Cents ($329,791.81).

So ORDERED, ADJUDGED, AND DECREED this 26th day of January, 1990.

The defendants raise two issues on appeal which we restate as follows:

1.  Was the Grover Davis letter properly before the trial court for consideration on plaintiff's motion for summary judgment?

2.  Was the evidence of accord and satisfaction sufficient to defeat plaintiff's motion for summary judgment?

In Indiana, summary judgment is not to be granted lightly, because entry of

---

**2.**  It is not apparent from the record why the defendants filed their response to the request for production with the trial court. Since 1987, Ind. Trial Rule 5(D) has prohibited the filing of discovery requests or responses with the court except in connection with motions for protective orders or sanctions, or for evidentiary purposes at trial or in connection with a motion.

summary judgment prevents the losing party from fully litigating the claim before the court. *Mullen v. Tucker* (1987), Ind. App., 510 N.E.2d 711, 715. In reviewing a trial court's entry of summary judgment, we are bound by the same standards as the trial court. *Lafary v. Lafary* (1985), Ind. App., 476 N.E.2d 155, 158. We may not affirm the entry of summary judgment unless the proponent of the motion has shown that there exists no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Korba v. Trans World Airlines* (1987), Ind.App., 508 N.E.2d 48, 51. Even if there is no genuine dispute as to any material fact, we may not affirm if the undisputed facts give rise to conflicting inferences. *Mullen*, 510 N.E.2d at 715. Where there is any doubt as to the existence of a factual issue, the trial court should not grant summary judgment, and, should it grant the motion where such doubt persists, we may not affirm the entry of judgment. *Farthing v. Life Insurance Co. of North America* (1986), Ind. App., 500 N.E.2d 767, 769.

Plaintiff contends that there is no evidence of an accord and satisfaction because the trial court, upon plaintiff's motion, had stricken the Grover Davis letter from the record of proceedings. Plaintiff notes that defendants did not challenge the trial court ruling striking the letter. Plaintiff fails to note, however, that the trial court struck the letter before defendants offered it in support of their response to plaintiff's motion for summary judgment. Plaintiff did not object or file a motion to strike the letter when defendants filed the letter in support of their response to plaintiff's motion.

Defendants note that plaintiff did not object to the Grover Davis letter appended to the response brief. Defendants further note that plaintiff, in his reply brief, argued that the letter itself did not establish an accord and satisfaction but did not argue that the letter was not properly before the court[3].

■ Although plaintiff vigorously argues that the Grover Davis letter was not properly before the court when it considered plaintiff's motion for summary judgment, and although defendants equally vigorously argue that the letter was properly before the court, neither side has offered any case law in support of its position. In particular, neither party has cited any precedent which holds that a court order striking a document from the record of the case bars a party from placing that document into the record at a later point in the proceedings. On the other hand, neither party has cited a case which holds that such an order does not bar the document from the record. In our review of the relevant precedents, we have found no case which squarely addresses the effect of a motion to strike on subsequent attempts to place the disputed evidence into the record. We must, therefore, decide whether a motion to strike a document from the record not only removes the document from the record but also bars the introduction of it as evidence into the record at later stages of the proceedings. We hold that the motion does not do so.

■ It is the general rule in this state that a party must object to evidence at the time it is offered into the record in order to keep it out of the record of proceedings. A party who fails to make a timely objection, or, for that matter, to file a timely motion to strike, normally waives right to have the

---

**3.** Plaintiff also makes the argument that the letter constitutes settlement negotiations and is, therefore, inadmissible. This was the basis for the motion to strike as well. It is true that evidence of unsuccessful settlement negotiations, as such, is not admissible as an admission or otherwise to be used to prove such things as liability or damages. *Hahn v. Ford Motor Co.* (1982), Ind.App., 434 N.E.2d 943, 956; *Brademas v. Real Estate Development Co.* (1977), 175 Ind.App. 239, 242, 370 N.E.2d 997, 999. However, where, as here, it is the contention that the

document expresses the *agreement* of the parties (which may have resulted from negotiations) and is offered to prove the terms of the agreement, the offer would not be in conflict with the purposes of the rule excluding evidence of *negotiations* and would be admissible. *Atlass v. Borinstein* (in Banc 1927), 85 Ind.App. 577, 579–580, 155 N.E. 48, 49. The *Atlass* case is particularly apt in this instance, since in *Atlass* the appellate court held the trial court properly admitted into evidence a letter which purported to show an accord and satisfaction. *Id.*

evidence excluded at trial and the right on appeal to assert the admission of evidence as erroneous. See, e.g., *Dean v. Dean* (1982), Ind.App., 439 N.E.2d 1378, 1385; *Redslob v. Redslob* (1982), Ind.App., 433 N.E.2d 819, 822; *Central Indiana Carpenters Welfare Fund v. Ellis* (1980), Ind. App., 412 N.E.2d 865, 866 n. 1; *Bartoszek v. Marshall* (1970), 148 Ind.App. 214, 264 N.E.2d 635. In failing to make a timely objection or motion, the party is, in effect, acquiescing in the admission of the evidence.

■ Furthermore, in Indiana, a ruling excluding evidence is not effective until the evidence is offered into the record. In cases seeking reversal because of allegedly improper rulings on motions in limine, our supreme court has consistently held that, until evidence is offered into the record, the trial court can make no final ruling on the admissibility of the evidence. In one such case, *Phillips v. State* (1990), Ind., 550 N.E.2d 1290, 1296, the supreme court wrote:

> Prior to trial, the State was granted a motion in limine which restricted submission of evidence on or reference to the victim's character or prior acts of misconduct. Appellant claims that the grant of this motion was error. The ruling on a motion in limine is not a final ruling on the admissibility of evidence and is not reviewable on appeal; harmful error occurs, if at all, when the evidence covered by the motion is offered and refused at trial. *Akins v. State* (1981), Ind., 429 N.E.2d 232, 237. The trial court's ruling on the State's motion in limine, therefore, presents no issue for our review.

The supreme court stated in *Akins v. State* (1981), Ind., 429 N.E.2d 232, 237: "Harmful error, if any, occurs when the questioned evidence is admitted at trial, and if error in its admission is to be available for appellate review, a proper objection must be entered at the time it is offered." (*citing Young v. State* (1980), Ind., 409 N.E.2d 579).

■ Here, the trial court granted plaintiff's initial motion to strike. At that time, however, defendants had not offered the Grover Davis letter in support of, or in opposition to, any motion. It was not until defendants filed their response to plaintiff's motion for summary judgment, that they sought introduction of the Grover Davis letter into the record of the case. At that point in time, plaintiff could have objected and filed a motion to strike if he wished to keep the letter out of the record of proceedings. Absent such action, the letter, as part of the Reed affidavit filed by the defendant in response to plaintiff's motion for summary judgment, was before the court at the time of consideration of the motion.

■ With regard to the substantive issue in this case, defendants argue that the trial court erred in granting summary judgment because a genuine issue of material fact existed on the question of whether the parties had reached an accord and satisfaction. Defendants note that the trial court was obligated to liberally construe all evidence in favor of the nonmovant and to resolve any doubts as to the existence of a genuine issue of fact against the opponent of the motion for summary judgment.

The defendants assert that they have produced facts tending to show the existence of an accord and satisfaction. Specifically, the defendants note that Ralph Reed, in his affidavit, stated that the plaintiff had agreed to settle its claims against the defendants in exchange for Ten Thousand Dollars ($10,000) profit to be derived from one of the jobs which the defendants had performed. In support of this contention, the defendants appended the Grover Davis letter. Reed stated that the plaintiff had indeed received Ten Thousand Dollars ($10,000) from proceeds on the Anderson project, and, further, had received personal financial statements from each of the defendants.

Plaintiff contends that Reed's affidavit is insufficient to create an issue of fact because Reed had no personal knowledge of the actual profits derived from the Anderson job and because Reed's estimate of the amounts derived was based on hearsay information. Furthermore, plaintiff asserts that, even assuming the Grover Davis letter set forth an agreement to

reach accord and satisfaction, the letter is limited to two of the construction projects, and, at most, constitutes a partial settlement. The plaintiff contends that the defendants produced no evidence that the parties had reached a settlement with regard to all the outstanding obligations for the sums which Guard paid out under the bonds.

The term "accord" denotes an express contract between two parties by means of which the parties agree to settle some dispute on terms other than those originally contemplated by the parties, and the term "satisfaction" denotes the performance of the contract. *Karvalsky v. Becker* (1940), 217 Ind. 524, 533, 29 N.E.2d 560, 563; *Homemakers Finance Service v. Ellsworth* (1978), 177 Ind.App. 640, 643, 380 N.E.2d 1285, 1288. Accord and satisfaction is an affirmative defense which must be specifically pleaded and proven by any party wishing to raise it. T.R. 8(C). The trier of fact normally is entrusted with the duty of deciding whether the party making the defense has met its burden of proof on each of the elements of the defense. *Chesak v. Northern Indiana Bank & Trust Co.* (1990), Ind.App., 551 N.E.2d 873, 875; *Nardine v. Kraft Cheese Co.* (in Banc 1944), 114 Ind.App. 399, 403, 52 N.E.2d 634, 635. The issue of whether an accord and satisfaction has been reached may be decided on motion for summary judgment only where the facts bearing on the issue are without dispute. *Chesak*, 551 N.E.2d at 875 n. 3; *Daube and Cord v. LaPorte County Farm Bureau* (1983), Ind.App., 454 N.E.2d 891, 894; *Nardine* 114 Ind.App. at 403, 52 N.E.2d at 635.

In his affidavit, Ralph Reed asserted that the various parties agreed that, in exchange for the assignment of at least $10,-000.00 in net profits from a job which the defendants had performed for the City of Anderson, Guard would release the defendants from their remaining obligations under the general indemnity agreement. He also stated that the net profits from the Anderson job amounted to more than $10,-000.00, and he specifically disputed plaintiff's affidavit which stated that the profit on the Anderson job only amounted to $7,934.44. In addition, Reed asserted that the defendants provided Guard with personal financial statements as required by the agreement between the parties. Finally, Reed appended certain bank statements, ledger sheets, and financial calculation sheets which allegedly demonstrated that Guard realized a net profit of at least $10,-000.00 on the Anderson job. (Record, pp. 70–74).

The Grover Davis letter stated that the parties had reached a conditional agreement that, upon the receipt of the $10,-000.00 net proceeds, Guard "would release Ralph Reed and his sons from the General Agreements of Indemnity." (Record, p. 69). The letter also provided that the $10,-000.00 had to be free of all liens and claims, that Reed and his sons had to provide Guard with audited personal financial statements, and that Guard would conduct its own investigation of the financial condition of Reed and his sons. (Id.).

This evidence, viewed in the light most favorable to the defendants, is sufficient to defeat plaintiff's motion for summary judgment. It is capable of supporting the inferences that Guard and the defendants reached an agreement under which the net profits of the Anderson job were to be exchanged for a release from liability under the indemnity agreement, that adequate consideration supported the agreement, and that the defendants surrendered the net profits pursuant to the agreement. The Grover Davis letter is ambiguous and does not conclusively limit the agreement to the Anderson and Springmill Lane projects. While the letter specifically mentions those two projects, it also specifically states that the receipt of the Anderson job profits would release the defendants from the General Agreements of Indemnity. It does not explicitly limit the release from liability to liability incurred in those two jobs. A trier of fact could draw the conclusion that the parties intended a release from all liability under the indemnity agreement.

Plaintiff contends that Reed had no personal knowledge of the amount of profit Guard received on the Anderson job. The

record shows that he did have access to certain bank statements and other records from which he was able to make certain calculations concerning the amount of guard's net profit. These documents provide some factual basis for the conclusions that Guard received at least $10,000.00 in net profits. Plaintiff disputes these calculations, but it is not for this court, as it was not for the trial court, to resolve this dispute on motion for summary judgment. Ultimately, Reed had sufficient personal knowledge to testify by affidavit as to the existence of the agreement and to provide an estimate of the amount Guard realized on the agreement. If plaintiff disputes the existence of the agreement, or if plaintiff disputes that Guard in fact received the $10,000.00 it was owed if the agreement did exist, it is free to put those issues before the finder of fact at trial.

The trial court erred in granting plaintiff's motion for summary judgment. The Grover Davis letter—which was not excluded from the record at the time it was offered in support of defendants' reply to plaintiff's motion—and the Ralph Reed affidavit create genuine issues of material fact as to the defendants' asserted affirmative defense of accord and satisfaction. It is for the trier of fact, then, and not the court on motion for summary judgment, to decide the merits of this defense.

REVERSED AND REMANDED.

RUCKER, P.J., and ROBERTSON, J., concur.