LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

K.A.T., INC., Defendant.

Civ. No. 2:93–CV–203–RL.

United States District Court,
N.D. Indiana,
Hammond Division.

June 24, 1994.

Edward G. Zaknoen, Lucas, Holcomb & Medrea, Merrillville, IN, for plaintiff.

Gregory Feary, Scopelitis, Garvin, Light & Hanson, Indianapolis, IN, for defendant.

### ORDER

LOZANO, District Judge.

This matter is before the Court on a Motion to Dismiss or, in the Alternative, to Stay the Proceedings Pending Exhaustion of State Administrative Remedies, filed September 23, 1993, by Defendant, K.A.T., Inc. ("KAT"); and on a Cross–Motion for Summary Judgment, filed November 25, 1993, by Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"). For the reasons set forth herein, the Court hereby **DENIES** KAT's Motion to Dismiss or, in the Alternative, to Stay the Proceedings Pending Exhaustion of State Administrative Remedies, and **DENIES** Liberty Mutual's Cross–Motion for Summary Judgment.

### BACKGROUND

Liberty Mutual filed its Complaint against KAT on July 9, 1993. Jurisdiction is based upon diversity of citizenship. The Complaint alleges that KAT breached its contract with Liberty Mutual and owes outstanding worker's compensation insurance premiums from July 1, 1990 to July 1, 1991. On September 23, 1993, KAT filed its Answer and this motion to dismiss for lack of subject matter jurisdiction, seeking in the alternative to stay these proceedings pending the exhaustion of administrative remedies.

In response to KAT's Motion, on November 16, 1993, Liberty Mutual filed a Memorandum in Opposition to the Motion to Dismiss or Stay Pending Exhaustion of Administrative Remedies, and also filed a Cross–Motion for Summary Judgment. A Memorandum in Response to Liberty Mutual's Cross–Motion for Summary Judgment was filed by KAT on December 29, 1993, and Liberty Mutual filed a Reply Memorandum in support of its Cross–Motion for Summary Judgment on January 18, 1994.

The undisputed facts of this case, as set forth by the parties, are as follows: KAT is a

trucking company, incorporated under the laws of the State of Indiana and operating under interstate motor carrier operating authority issued by the Interstate Commerce Commission. KAT operates a terminal and office facility in Chesterton, Indiana, from which it conducts all trucking operations, including, but not limited to, dispatching activities, training and safety programs, billing and collection matters, and maintenance and refueling of trucks. During the policy periods in question, each of KAT's truck drivers operated out of and were paid from the Chesterton, Indiana location. Liberty Mutual is a Massachusetts corporation authorized to sell insurance in the State of Indiana.

In 1987, KAT, through its insurance agent, Valparaiso First Insurance Company, applied for a worker's compensation insurance policy through the Indiana Compensation Rating Bureau ("ICRB") pursuant to Indiana Code section 27–7–2–28. Under this statute, an employer that has had three rejections in the voluntary worker's compensation insurance market is eligible for worker's compensation coverage through the assigned risk pool, which is also known as the "involuntary insurance market". The assigned risk pool consists of all Indiana insurers authorized to provide worker's compensation insurance. After an employer's application with the ICRB is received, the administrator of Indiana's assigned risk pool assigns one of the ICRB's serving carrier members to provide the applicant with worker's compensation insurance at the initial premium rate fixed by the board. See Ind.Code Ann. § 27–7–2–29 (West 1993).

Following KAT's application in 1987, the ICRB assigned Liberty Mutual to provide KAT with worker's compensation insurance coverage. A worker's compensation insurance policy was subsequently issued to KAT by Liberty Mutual for the time period from July 1, 1987 to July 1, 1988. KAT paid the premiums due during this initial policy period. The policy was thereafter renewed on an annual basis on July 1, 1988, July 1, 1989, and July 1, 1990.

After the renewal policy ended on July 1, 1991, Liberty Mutual conducted a final audit and computed additional premiums for KAT's worker's compensation insurance policy. See Ind.Code Ann. § 27–7–2–33 (West 1993). These additional premiums were based on an experience modification factor reflected in Liberty Mutual's final audit report. The experience modification factor provides a rating for each employer participating in the assigned risk plan based upon a combination of the number of claims filed by an employer's employees and the amount of each claim that is paid or expected to be paid. The resulting experience modification factor therefore takes into consideration the loss associated with a particular employer, based on an audit of that employer's prior worker's compensation claims history.

The audit and adjustment of the experience modification rating by Liberty Mutual resulted in the calculation of premiums owed by KAT in the amount of $95,441.00. KAT's premiums in the previous four years had been approximately $30,000 per year. KAT indicates that upon notification of the new premiums due, KAT contacted Liberty Mutual and expressed its concern that the experience modification factor did not accurately reflect its true losses for the 1990 to 1991 policy period.

The affidavit of John Contella, a premium accountant with Liberty Mutual, states that Liberty Mutual's policy regarding premium disputes by its insureds is to provide the insured with supporting documentation and afford the insured a reasonable opportunity to review the documentation. The insured may then contact Liberty Mutual in writing to explain why it believes the premium is incorrect. Liberty Mutual then reviews the manner in which the premium was calculated and determines whether or not the premium was property calculated. The affidavit of John Contella states that, upon notification by KAT that the premium had been incorrectly computed, this procedure was followed. The communication between the two parties, pertinent to the resolution of this dispute, is as follows:

After KAT's initial complaint regarding the premium increase, Liberty Mutual responded, on October 10, 1991, by sending copies of the final audit and the earned premium statement to KAT. On November 4,

1991, Mr. Richard Moldstad, safety manager for KAT, responded to Liberty Mutual's information by sending a letter to John Contella. The letter indicated that although KAT was in agreement with the audit findings, KAT was also concerned with how it could have been placed on the "blended rating plan" as assigned by Liberty Mutual. KAT enclosed a check in the amount of $15,906.83, and indicated that it would make five more such payments over the next five months to satisfy the premium payment. KAT subsequently made its second, and last installment payment on or about December 4, 1991. In December 1991, Liberty Mutual had the remaining amount due on the premium turned over for collection to its collection agent, United Mercantile Agencies, and informed KAT of this change.

On February 10, 1992, Mr. Gregory Feary, attorney for KAT, sent a letter to Mr. Donald Axman, the director of adjustment service at United Mercantile Agencies, informing him that KAT disputed the amount of premiums owed Liberty Mutual on its worker's compensation insurance policy. The letter stated that KAT was considering filing a formal complaint, but currently was reviewing its files and hoped to resolve the matter without having to resort to litigation. On April 21, 1992, Mr. Axman forwarded to Mr. Feary further supporting documentation requested by KAT. On June 17, 1992, KAT, through counsel, again informed Liberty Mutual of its disagreement with the premiums computed due to Liberty Mutual. KAT again requested further information. The next day Robert Graves, assistant vice-president of United Mercantile Agencies, wrote the president of KAT informing that Liberty Mutual did not recognize the dispute and would initiate litigation to recover the premiums it considered due and owing. Not until July 9, 1993, did Liberty Mutual finally take action by filing its Complaint in this Court to collect premiums that it alleges are owed by KAT for its worker's compensation insurance policy from July 1, 1990 to July 1, 1991.

## DISCUSSION

### KAT's Motion to Dismiss or, in the Alternative, to Stay Pending Administrative Proceedings

*Subject Matter Jurisdiction*

■ Pursuant to Federal Rule of Civil Procedure 12(b)(1), KAT claims that this action should be dismissed for lack of subject matter jurisdiction because Liberty Mutual has failed to exhaust its administrative remedy pursuant to Indiana Code section 27–7–2–20.3. KAT contends that Liberty Mutual's claim is subject to the exclusive jurisdiction of the ICRB. This contention is flawed. A district court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and over actions involving diversity of citizenship pursuant to 28 U.S.C. section 1332. Liberty Mutual's Complaint asserts subject matter jurisdiction based upon diversity of citizenship. The requirements for diversity jurisdiction, set forth in 28 U.S.C. section 1332, read in pertinent part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs and is between—
>
> (1) Citizens of different States;
>
> \* \* \* \* \* \*

Liberty Mutual brought this action in diversity by alleging that the parties are citizens of different states and that the amount in controversy is in excess of $50,000. KAT does not contest these assertions. Rather, citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), KAT argues that Indiana law is applicable to this dispute, and that under Indiana law Liberty Mutual has an administrative remedy which divests the Court of subject matter jurisdiction.[1]

---

**1.** KAT incorrectly argues that *Celadon Trucking Services of Indiana, Inc. v. Liberty Mutual Insurance Company,* IP 89–167–C (S.D.Ind.1991) is controlling. *Celadon* held that the plaintiff insured was required to exhaust its administrative remedies before it could file a diversity action in

federal court based on Indiana substantive law, not that the court lacked subject matter jurisdiction to hear a dispute over worker's compensation insurance premium rates. Furthermore, the decision is not of precedential value to this Court.

KAT misconstrues the *Erie* doctrine. "Although state law generally supplies the rules of decision in federal diversity cases ... it does not control the resolution of issues governed by federal statute...." *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 198, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988); *see also Hanna v. Plumer*, 380 U.S. 460, 467, 85 S.Ct. 1136, 1141–42, 14 L.Ed.2d 8 (1965). Clearly, 28 U.S.C. section 1332 confers jurisdiction on federal courts where the amount in controversy exceeds $50,000 and the action is between citizens of different states. "State law cannot be construed to enlarge or contract federal jurisdiction." *Beach v. Owens–Corning Fiberglas Corp.*, 728 F.2d 407, 409 (7th Cir.1984). State law may provide that Liberty Mutual can state no claim for relief under Indiana law from any entity other than the ICRB; "if Indiana law so provides, this court will be bound so to hold." *Jones v. National Union Fire Ins. Co.*, 664 F.Supp. 440, 441 (N.D.Ind.1987) (citing *Erie*, 304 U.S. 64, 58 S.Ct. 817); *see also McCutchen v. Liberty Mut. Ins. Co.*, 699 F.Supp. 701, 704–05 (N.D.Ind.1988). Such a determination would be based upon the strength of Liberty Mutual's state law claim rather than upon any want of federal jurisdiction. Because Liberty Mutual's Complaint meets the pleading requirements of diversity jurisdiction, this Court has subject matter jurisdiction over this action.

Despite the Court's ruling that it is empowered to hear this action, the question remains whether Liberty Mutual has stated a claim upon which relief can be granted under Indiana law. KAT contends that Liberty Mutual has not, because this action is barred by issue preclusion, because Liberty Mutual is required to exhaust its state administrative remedies before the ICRB prior to seeking redress in a court of law on the theory of breach of contract, and because this action is within the primary jurisdiction of the ICRB.

*Issue Preclusion*

█ KAT argues that collateral estoppel, also known as issue preclusion, bars Liberty Mutual from arguing that it need not exhaust administrative remedies available under Indiana Code section 27–7–2–20.3 before initiating this action. "When an issue has already been litigated in a former suit, and the former suit precludes the litigation of that issue in a present suit, the preclusive effect is referred to as 'issue preclusion.'" *Leal v. Krajewski*, 803 F.2d 332, 334 (7th Cir.1986). The purpose of issue preclusion is "to prevent repetitious litigation of what is essentially the same dispute." 18 Wright, Miller and Cooper, *Federal Practice and Procedure*, § 4417 at 149 (quoting Restatement (Second) of Judgments § 27, comment c (1981)). The elements of issue preclusion are as follows:

> First, there must be a final judgment in the first action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Second, the issue implicated in the second suit must be identical in all respects to the issue decided in the first suit, with no changes in the controlling facts and applicable legal rules. *Commissioner v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948). Third, the issue must have actually been litigated and have been essential to the prior decision. *Id.* at 601–02, 68 S.Ct. at 721.

*Coleman v. Commissioner of Internal Revenue*, 16 F.3d 821, 830 (7th Cir.1994).

█ KAT claims that Liberty Mutual is precluded from arguing that it need not exhaust administrative remedies pursuant to Indiana Code section 27–7–2–20.3 by virtue of the decision in *Celadon Trucking Services, Inc. v. Liberty Mutual Ins. Co.*, IP 89–167–C (S.D.Ind.1991). However, *Celadon* held only that Celadon, the plaintiff and insured, had to resort to the procedure detailed in Indiana Code section 27–7–2–20.3, not that Liberty Mutual, the insurer, was obligated to do so. The obligations of the insurer were not discussed nor decided.

The issue to be decided in this case is whether the insurer has an administrative remedy under Indiana Code section 27–7–2–20.3, which it is required to exhaust before it may bring a breach of contract claim to collect premiums which it believes to be due and owing. This issue was not decided in *Celadon*, the issues of that action were not identical to those raised here, and the doc-

trine of issue preclusion is not applicable to this dispute.

*Exhaustion of State Administrative Remedies Under Indiana Code section 27–7–2–20.3*

KAT's next contention is that Indiana Code section 27–7–2–20.3 provides an administrative remedy for both the insured and the insurer which Liberty Mutual was bound to following before initiating suit. Indiana Code section 27–7–2–20.3 reads in pertinent part:

(c) The following procedure shall be used for disapproval of minimum premiums or rates:

\* \* \* \* \* \*

(2) Every company or the bureau shall provide within Indiana reasonable means whereby any person aggrieved by the application of its filings may be heard on written request to review the manner in which such rating system has been applied in connection with the insurance afforded or offered. If the company or the bureau fails to grant or reject such request within thirty (30) days, the aggrieved person may proceed in the same manner as if the request had been rejected. Any aggrieved person affected by the action of such company or the bureau on such request may, within thirty (30) days after written notice of such action, appeal to the commissioner who, after a hearing held upon not less than ten (10) days written notice to the aggrieved person and to such company or the bureau, may affirm, modify, or reverse such action.

Ind.Code Ann. § 27–7–2–20.3 (West 1993).

The court in *Celadon* held that Celadon, the insured, was required to exhaust its administrative remedy under Indiana Code section 27–7–2–20.3. KAT would have this Court conclude not only that it should follow *Celadon* (which it is not obligated to do), but also that *Celadon* recognizes an administrative remedy for the insurer as well as the insured, which must be exhausted before filing a suit to collect the premiums allegedly due. This, however, is not the plain language of the statute, nor is it what the court in *Celadon* held.

The *Celadon* opinion holds that the insured has an administrative remedy which it must exhaust before bringing its claim in court to dispute minimum premium rates. Although the court dismissed, *sua sponte*, the insurer's counterclaim for the reason that it addressed the same issues presented by the insured, this disposition does not indicate that the court found that an insurer also had a remedy under Indiana Code section 27–7–2–20.3, which must be exhausted before it may file a contract action. The court dismissed the insurer's counterclaim which raised the same issues as the plaintiff's claim simply as a matter of judicial economy.

■ Addressing the issue that *Celadon* did not, this Court concludes that Indiana Code section 27–7–2–20.3 does not provide the insurer with a remedy for collecting worker's compensation premiums it is owed. There is no Indiana case law available to aid this Court in the interpretation of this statute. Therefore, under principles of statutory construction applicable in Indiana, the Court will look to the plain language of the statute to discern what the Indiana legislature intended this statute to accomplish. *Irmscher v. McCue,* 504 N.E.2d 1034, 1036 (Ind.Ct.App. 1987) ("It is the function of this court to ascertain and implement the legislature's intent, and the legislature's intent must be primarily determined by giving effect to the ordinary and plain meaning of the language used in the statute.")

■ Section (c) of Indiana Code section 27–7–2–20.3 begins by stating that "the following procedure shall be used for disapproval of minimum premiums or rates." Ind. Code Ann. § 27–7–2–20.3(c) (West 1993). This language indicates the procedure to be used by the worker's compensation rating bureau or an insurance company to dispute the premium rate. Liberty Mutual does not dispute the premium rate. Rather, it seeks to enforce the rate. Liberty Mutual's claim alleges that under the insurance contract KAT owes Liberty Mutual the remaining sum of $63,627.30 on its worker's compensation insurance policy. It is KAT who disputes the rate, and therefore, Indiana Code

section 27–7–2–20.3(c)(1) is inapplicable to this action.

Section 27–7–2–20.3(c)(2) provides the procedure by which an insured may contest the premiums applied to it. That section, in part, states: "Every company or the bureau shall provide within Indiana reasonable means whereby any person aggrieved by the application of its filings may be heard on written request to review the manner in which such rating system has been applied in connection with the insurance afforded or offered." Ind.Code § 27–7–2–20.3(c)(2). The statute requires both the company and the bureau to have procedures available for the "person aggrieved", namely the insured, to contest the manner in which the insured's premium rate has been calculated. In this case, Liberty Mutual acknowledged KAT's complaint regarding its new premium rate and the experience modification rating used in the calculation. Liberty Mutual then provided KAT with the supporting documentation for the premium calculation and allowed KAT time to dispute the method of the calculation. This procedure is anticipated by the statute.

If unhappy with the procedure used by the insurer, the insured can go to the ICRB (referred to as the "bureau" in the statute), rather than to the company itself, "to review the manner in which such rating system has been applied in connection with the insurance afforded or offered." Ind.Code § 27–7–2–20.3(c)(2). Furthermore, under the statute, the "aggrieved person" can appeal to the commissioner if he believes that he was not given "reasonable means" to be heard by the insurer. *Id.*

■ Section 27–7–2–20.3(c)(2) creates a remedy for a "person aggrieved" by the action of an insurance company or the ICRB. There is no way that Liberty Mutual, the insurer, could be considered a "person aggrieved" under the plain meaning of this statute. The insurer is not the "person aggrieved" that the Indiana legislature intended this statute to protect. The statute is not intended to provide a remedy for the insurer, and there is no administrative remedy for the insurer to exhaust.

KAT argues, however, that the statute creates a procedure available to both the insured and the insurer. To this end KAT provides the affidavit of Darlene Kepner, the manager of the ICRB since 1985. Ms. Kepner states in her affidavit that "[a]n 'aggrieved person' would include insureds who contend their workers' compensation premiums are incorrect as a result of the misapplication of rating manuals, rules, rates or rating plans.... Likewise, an insurer *may* initiate an appeal to the DRC [the Dispute Resolution Committee of the ICRB] to settle a rate classification dispute involving one of its insureds."

■ Taken as true, this affidavit only proves that the insurer may initiate an appeal to the DRC, not that the insurer must. Whether Liberty Mutual could have gone to the ICRB to settle the rate dispute with KAT is irrelevant. Indiana Code section 27–7–2–20.3 does not required an insurer, prior to filing suit to recover on its contract, to go to the ICRB every time that one of its insureds complains that it does not approve of its premium rate. Such a reading is not mandated by the plain language of Indiana Code section 27–7–2–20.3(c).

### Doctrine of Primary Jurisdiction

■ KAT also argues that this Court should stay this action under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction states that "when any part of the claim is within the agency's exclusive jurisdiction, then the whole claim must first be heard by the agency." *Shlens v. Egnatz,* 508 N.E.2d 44, 46 (Ind.Ct.App.1987).

The doctrine of primary jurisdiction is a reflection of the fact that when a court is confronted with a claim as to which it shares concurrent jurisdiction with an administrative agency, there may be sound reasons for the court to stay its hand until the agency has applied its expertise to the salient questions. The doctrine comes into play when a claim is cognizable in a court but adjudication of the claim "requires the resolution of issues which, under a regulatory scheme have been placed within the special competence of an administrative body; in such a case the judicial process is

suspended pending referral of such issues to the administrative body for its views." *Hansen v. Norfolk & Western Ry. Co.*, 689 F.2d 707, 710 (7th Cir.1982) (quotation and citation omitted).

 As noted above, the statute at issues does not provide an administrative remedy for an insurer seeking to recover delinquent premiums. The administrative remedy is created in favor of the insured who seeks to contest those premiums. *See* Ind. Code § 27–7–2–20.3(c). The statute requires every insurer or the ICRB to provide "reasonable means" whereby an insured may request a review of the manner in which the rating system has been applied to evaluate its insurance premiums. The statute then allows an appeal to the commissioner if the insured is not satisfied with the results. This appeal is not mandatory. The statute states that an "aggrieved person *may*, within thirty (30) days after written notice of such action, appeal to the commissioner...." Ind.Code Ann. § 27–7–2–20.3(c)(2). The insured does not have to appeal to the commissioner for final determination, it may bring such a complaint in a court of competent jurisdiction. The legislature has not designated the procedure in Indiana Code section 27–7–2–20.3(c) as the exclusive forum in which to dispute the minimum premium rate. The doctrine of primary jurisdiction is not applicable because the ICRB and insurance commissioner do not have exclusive jurisdiction over any part of the claim asserted.

Indiana Code section 27–7–2–20.3 does not provide an administrative remedy which must be exhausted by an insurer initiating a breach of contract claim in a court of competent jurisdiction. Accordingly, Liberty Mutual's claim that it is owed premiums under its contract with KAT is properly before this Court. For the reasons set forth above, KAT's Motion to Dismiss, or in the Alternative to Stay, Pending Administrative Proceedings, is hereby **DENIED**.

### Liberty Mutual's Cross–Motion for Summary Judgment

*Summary Judgment Standard*

 Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *First Wis. Trust Co. v. Schroud*, 916 F.2d 394, 398 (7th Cir.1990). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must read all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988).

 "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might effect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). In the case at bar, KAT disputes the amount of the worker's compensation insurance premium that Liberty Mutual claims is due and owing. Liberty Mutual argues that there is no factual dispute over the premium amount because KAT has waived its right to dispute the premium rate, and alternatively, because the parties entered an accord and satisfaction by agreeing to pay the amount claimed due, and initiating payment of $15,000. Because there are material issues of fact regarding these contentions, summary judgment is not appropriate.

*Waiver*

Liberty Mutual claims that the amount of the insurance premium due is not a genuine issue for trial because KAT has waived its right to dispute the premium amount. Liberty Mutual contends that KAT followed the statutory procedure for disapproval of minimum premium rates by filing a "formal complaint" with Liberty Mutual and requesting documentation to support the amount that

Liberty Mutual claims was owed. According to Liberty Mutual, the statute then required KAT to appeal to the commissioner within thirty (30) days. As KAT failed to appeal to the commissioner, Liberty Mutual contends that KAT has waived its opportunity to dispute the premium rate, or at least has waived its right to make use of the administrative remedy. The Court agrees that KAT has waived its right to make use of the administrative remedy, but not that it has waived the right to contest the premium rate.

■ Waiver is the intentional relinquishment of a known right. *American National Bank & Trust Co. v. St. Joseph Valley Bank,* 180 Ind.App. 546, 391 N.E.2d 685, 687 (1979). "Waiver contemplates something done designedly or knowingly which modifies or changes existing rights. It presupposes full knowledge of a right existing and an intentional surrender and relinquishment of that right." *Lavengood v. Lavengood,* 225 Ind. 206, 73 N.E.2d 685, 688 (1947).

KAT, by letter from its attorney, filed a "formal complaint" with Liberty Mutual regarding the calculation of KAT's worker's compensation premium rate. This action is in accord with the statute's language that "[e]very company or bureau shall provide within Indiana reasonable means whereby any person aggrieved by the application of its filings may be heard on written request to review the manner in which such rating system has been applied in connection with the insurance afforded or offered." Ind.Code Ann. § 27–7–2–20.3(c)(2) (West 1993). The "company," Liberty Mutual, provided KAT with information regarding its calculation of the premium. KAT had the opportunity to dispute these findings with Liberty Mutual, or if unsatisfied with the process or results received, appeal to the commissioner. Such an appeal is allowed by the statute, which states, "[a]ny aggrieved person affected by the action of such company or the bureau on such request may, within thirty (30) days after written notice of such action appeal to the commissioner...." *Id.*

Although the statute allowed KAT to appeal to the commissioner, it did not do so. KAT has relinquished its right to appeal to the commissioner, but this does not mean that it has relinquished its right to dispute the premium rate.

■ Liberty Mutual argues that by waiving resort to the administrative appeal, KAT has waived the right to dispute the premium rate. This Court does not agree with this contention. The language of section 27–7–2–20.3 states that an aggrieved person, who is affected by the actions of an insurer, may appeal to the commission. The statute does not state that the aggrieved person must take this course of action. Resort to the administrative appeal to the commissioner is permissive rather than mandatory. It is nowhere stated or implied that failure to make use of this permissive appeal bars an insured from challenging the rate in a breach of contract action brought by the insurer. There is nothing in the statute which indicates that KAT cannot dispute the calculation of the premium rate in this Court. Therefore, this Court finds that KAT, although it has waived the remedy afforded to it by section 27–7–2–20.3, has not waived its right to dispute the premium rate. Because the calculation of the premium rate is disputed, it is a genuine issue of material fact which precludes summary judgment in this case.

*Accord and Satisfaction*

■ The second argument set forth by Liberty Mutual for summary judgment is that KAT entered into an accord and satisfaction with Liberty Mutual and is barred from disputing the premium amount.

■ "Accord and satisfaction is a method of discharging a contract, or settling a cause of action, by substituting for the contract or dispute an agreement for satisfaction." *Mominee v. King,* 629 N.E.2d 1280, 1282 (Ind.Ct.App.1994) (quoting *Daube and Cord v. LaPorte County Farm Bureau Co–Operative Ass'n,* 454 N.E.2d 891, 894 (Ind.Ct.App.1983)). An "accord" is an agreement between a debtor and a creditor where the creditor accepts a lesser sum in lieu of greater liquidated or unliquidated amount. *Mominee,* 629 N.E.2d at 1282; *Chesak v. Northern Indiana Bank & Trust,* 551 N.E.2d 873, 875 (Ind.Ct.App.1990). The satisfaction refers to the performance of the agreement.

**990**

*Chesak,* 551 N.E.2d at 875. As a contract, accord and satisfaction requires a meeting of the minds or evidence that the parties intended to settle the dispute. *Mominee,* 629 N.E.2d at 1282. The existence of an accord and satisfaction is ordinarily a question of fact, but, where those facts are undisputed, the question is one of law. *Reed v. Dillon,* 566 N.E.2d 585, 590 (Ind.Ct.App.1991); *see also Chesak,* 551 N.E.2d at 875 n. 3 (citing *Nardine v. Kraft Cheese,* 114 Ind.App. 399, 52 N.E.2d 634, 635 (1944)). The party pleading the existence of accord and satisfaction has the burden of proof. *Daube and Cord,* 454 N.E.2d at 894.

KAT contends that there was never any agreement between the parties to create an accord. Liberty Mutual's only evidence of an accord is a letter dated November 4, 1991, to Mr. John Contella of Liberty Mutual from Richard Moldstad, the safety manager at KAT. Although the letter states that KAT agreed with the audit finding sent by Liberty Mutual, the letter also states, "[w]e do, however, question as to how KAT could have been placed in a situation using the 'blended rating plan' assigned by Liberty Mutual whereby we are now owing an amount as great as $95,440.96!" This statement, along with the fact that KAT, in subsequent letters to Liberty Mutual, continued to question the premium rate being charged by Liberty Mutual, is evidence that there was no agreement, or "accord."

Liberty Mutual further contends, however, that the two installment payments of approximately $15,000 each, made by KAT, are indications of an accord and satisfaction. In response, KAT points out that Indiana Code section 27–7–2–31 states that "[n]o employer who does not pay the advance premiums or premium when due, shall be entitled to insurance, nor shall any coverage be extended until all obligations to pay worker's compensation insurance premiums contracted during the previous twelve (12) months have been paid." Ind.Code Ann. § 27–7–2–31 (West 1993). This section shows that KAT needed to make payments on the premium due in order to retain worker's compensation insurance for its employees. The significance of partial payment is therefore in dispute.

Viewed in the light most favorable to KAT, the partial payment is not conclusive of an accord and satisfaction, but rather, is evidence that KAT was attempting to retain it insurance while contesting the premium.

The burden to support the defense of accord and satisfaction is on Liberty Mutual. It has not been shown that no genuine issue of material fact exists. Accordingly, summary judgment is inappropriate.

### CONCLUSION

For the reasons set forth above, KAT's Motion to Dismiss, or in the Alternative to Stay, Pending Exhaustion of Administrative Remedies, pursuant to Federal Rule of Civil Procedure 12(b)(1) is hereby **DENIED.** Liberty Mutual's Cross–Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is also **DENIED.**