AUTOBANC CORP., d/b/a CNAC,
et al., Appellant–Defendant,

v.

HODGES TOWING SERVICE,
Appellees–Plaintiff.

No. 53A01–0207–CV–260.

Court of Appeals of Indiana.

Aug. 13, 2003.

Douglas J. Deglopper, Indianapolis, IN,
Attorney for Appellant.

Angela Parker, Bloomington, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Autobanc Corp. d/b/a CNAC ("CNAC") appeals from the trial court's judgment that it was liable for unpaid towing and storage costs associated with a vehicle in which CNAC had a security interest. We affirm.

### Issues

CNAC raises one issue on appeal, which we separate into two issues and restate as:

1. Whether the trial court properly applied the Abandoned Motor Vehicle Statute, Indiana Code chapter 9–22–1, to this case; and

2. Whether the trial court properly determined that CNAC was jointly and severally liable, along with the purchasers of the vehicle, for towing and storage costs incurred after the vehicle was "totalled" in an accident and declared abandoned.

### Facts and Procedural History

On August 31, 2001, Patricia and Russell Bright agreed to purchase a 1995 Ford from J.D. Byrider in Bloomington. CNAC financed their purchase via an installment loan and security agreement. That day, the Brights took possession of the vehicle. At the time of the sale, CNAC was the record owner of the vehicle, and J.D. Byrider did not provide the Brights with the certificate of title.

Although Russell Bright did not have a driver's license, he was driving the 1995 Ford on September 29, 2001, and was involved in an accident that totalled the vehicle. After the accident, the Bloomington Police Department requested that Hodges Towing Service ("Hodges") tow the vehicle to its facility in Bloomington. Hodges stored the vehicle on its lot for a total of 167 days at a rate of $15.00 per day.

The Brights did not make any attempt to claim the vehicle while it was stored on Hodges' lot. Two days after the accident, the Brights notified CNAC that the wrecked Ford was at Hodges, but CNAC did not claim or repossess the car. Hodges sent several notices to the Brights and to CNAC indicating that the wrecked vehicle was accruing charges at its lot. However, neither the Brights nor CNAC ever paid the towing and storage costs.[1] The vehicle was eventually declared to be abandoned and was sold. Hodges sued both the Brights and CNAC for the unpaid towing and storage costs associated with the vehicle. The trial court found that the Brights and CNAC, as owners or lienholders, were jointly and severally liable for the costs, which amounted to $2,610.00. CNAC initiated this appeal.

### Discussion and Decision

#### I. Standard of Review

CNAC is in the position of appealing from a negative judgment by the trial court. On appeal from a negative judgment, we will affirm the trial court's decision unless it is contrary to law. *Commissioner, Ind. Dept. of Envtl. Mgmt. v. RLG, Inc.*, 755 N.E.2d 556, 559 (Ind.2001). In determining whether the judgment is contrary to law, we will neither reweigh the evidence nor judge the credibility of witnesses. We will consider the evidence in a light most favorable to the party prevailing at the trial court, and we will "reverse the judgment only if the evidence

---

**1.** Although Patricia Bright had purchased insurance for the vehicle, the insurance company refused to pay her claim because Russell Bright was not listed as a co-owner or a designated driver on the policy.

leads to but one conclusion and the trial court reached the opposite conclusion." *Id.* We will affirm if there is substantial evidence of probative value to support the judgment on any legal theory. *Bayh v. Sonnenburg,* 573 N.E.2d 398, 402 (Ind. 1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992).

## II. Application of Abandoned Vehicle Statute

■ CNAC first argues that Indiana's Abandoned Motor Vehicle Statute, located at Indiana Code chapter 9–22–1, does not apply to the case at bar. CNAC claims that this chapter applies only to vehicles that have been left on public or private property and are found by police or citizens. It argues that since the identity of the owners of the vehicle was known to Hodges, the provisions of the Abandoned Motor Vehicles chapter do not apply. We disagree.

Indiana Code section 9–13–2–1 provides several definitions for an "abandoned vehicle," one of which is: "A vehicle that has been removed by a towing service or public agency upon request of an officer enforcing a statute or an ordinance other than this chapter if the impounded vehicle is not claimed or redeemed by the owner or the owner's agent within twenty (20) days after the vehicle's removal." Ind. Code § 9–13–2–1(6). The vehicle at issue in this case clearly falls within this definition of abandoned vehicle. The car was involved in an accident, and the Bloomington Police requested that Hodges tow it from the scene. No one redeemed the vehicle within twenty days, so it was properly considered an abandoned vehicle.

Furthermore, Indiana Code section 9–22–1–10 describes one circumstance under which a vehicle may be declared to be abandoned. It states, "If the person who owns or holds a lien under section 8 of this chapter does not appear and pay all costs, the bureau shall declare the vehicle abandoned and provide for disposal under this chapter." Ind.Code § 9–22–1–10. Neither the owner nor the lienholder of the vehicle in question appeared to pay the costs and regain possession of the vehicle. These facts clearly indicate that the car was abandoned, and the statutory procedures for disposing of an abandoned vehicle were appropriately commenced. It was clearly within the discretion of the trial court to determine that the Abandoned Motor Vehicle chapter applied to this case.

## III. CNAC's Liability For Towing And Storage

■ CNAC further argues that even if the Abandoned Motor Vehicle statute applies, CNAC is merely a lienholder, not an owner, and is therefore not liable for towing and storage costs. We disagree.

The Abandoned Motor Vehicle statute states that, "[t]he person who owns an abandoned vehicle or parts is: (1) responsible for the abandonment; and (2) liable for all of the costs incidental to the removal, storage, and disposal; of the vehicle or the parts under this chapter." Ind.Code § 9–22–1–4. For the purposes of the Abandoned Motor Vehicle statute, "owner" is defined as "the last known record titleholder of a vehicle according to the records of the bureau under IC 9–17." Ind.Code § 9–13–2–121(c).

We note that the manner in which the Abandoned Motor Vehicle statute is written does create some difficulty in unique cases such as this one. Typically, ownership of a vehicle is determined by the sales provisions of our state's version of the Uniform Commercial Code, rather than by our Certificate of Title Act. *Madrid v. Bloomington Auto Co., Inc.,* 782 N.E.2d 386, 395 (Ind.Ct.App.2003). Although our vehicle registration has been considered a

"registration" system rather than an "ownership" system, *id.,* our legislature has carved out an exception to typical ownership determination when it comes to abandoned vehicles. The exception that the legislature has created causes difficulty in situations where a vehicle is abandoned before the purchaser, who would most likely be considered the owner under the usual analysis, has not had a chance to title the vehicle in his name. In those cases, as the statute now stands, the last known record titleholder and the entity responsible for costs associated with removing, storing, and disposing of the vehicle, could be a bank or other holder of a mere security interest in the vehicle. This type of lienholder liability is unique to the Abandoned Motor Vehicle statute and would not extend to hold lienholders liable for debts like non-payment of mechanic fees, as CNAC suggests.

■ Despite this difficulty, if a statute is unambiguous, we may not interpret it, but must give the statute its clear and plain meaning. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). The above statutory provisions clearly indicate that the record titleholder of an abandoned vehicle is responsible for the costs incurred in removing, towing, and disposing of the vehicle. The parties do not dispute that CNAC was the record titleholder of the vehicle at the time that the Brights agreed to purchase it. CNAC seems to argue, however, that before the car became an "abandoned vehicle," title was transferred into the Brights' names.

At trial, Hodges presented evidence that CNAC was the record titleholder of the 1995 Ford at issue. They submitted a letter from the Bureau of Motor Vehicles, dated January 14, 2001, stating that according to BMV records, CNAC was the record owner of the vehicle. Since Hodges met its burden of going forward with this evidence, the burden shifted to CNAC to present evidence that it was not, in fact, the record owner. Patricia Bright testified that after thirty days, she and Russell tried to transfer title into their names, but were unsuccessful because they did not have the appropriate paperwork. Transcript at 30–31. CNAC then presented evidence that its loan log indicated that title was transferred on October 3, 2001. However, CNAC failed to admit the new title into evidence.[2] *Id.* at 34–35. The trial court noted the discrepancy between CNAC's records and the BMV letter from January 2002. Whether the title was transferred into the Brights' names before it became an abandoned vehicle was an issue of fact for the trial court, and the record supports the conclusion that CNAC was the record titleholder at the time that the vehicle was abandoned. We affirm the trial court's determination that CNAC was liable for the towing and storage costs because the record supports the conclusion that CNAC was the record owner.

Since we affirm the trial court's decision on the basis that CNAC is liable as an owner, we need not reach the question of whether it would be liable if it was only a lienholder.

**2.** A Bureau of Motor Vehicles document, dated January 14, 2002, indicated that CNAC was the vehicle owner and that there were no lienholders. Unlike this BMV document, the Indiana Certificate of Title issued on October 3, 2001, naming the Brights as owners and CNAC as a lienholder, was not part of the record at trial. Although Appellants include a copy of the title in their Appendix, this document cannot be considered on appeal. See *Chesterfield Mgmt., Inc. v. Cook,* 655 N.E.2d 98, 101 (Ind.Ct.App.1995), *trans. denied.* The trial court did not make a finding as to whether CNAC was an owner or a lienholder of the vehicle.

*Conclusion*

Based on the foregoing, we conclude that the trial court's determination that CNAC is liable for towing and storage costs associated with the abandoned vehicle is not contrary to law. We affirm.

Affirmed.

FRIEDLANDER and VAIDIK, JJ., concur.