SEDONA DEVELOPMENT GROUP, INC. and Richard C. Wolf, Appellants–Defendants,

v.

MERRILLVILLE ROAD limited partnership and In Home Investors, Inc., Appellees–Plaintiffs.

No. 45A03–0306–CV–211.

Court of Appeals of Indiana.

Jan. 23, 2004.

Edward P. Grimmer, Crown Point, IN, Attorney for Appellants.

Steven W. Handlon, Handlon & Handlon, Portage, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants Sedona Development Group, Inc. ("Sedona") and Richard C. Wolf ("Wolf") appeal the trial court's judgment in favor of appellee-plaintiffs Merrillville Road Limited Partnership ("MRLP") and IN Home Investors, Inc. ("IN Home"). Specifically, Sedona and Wolf contend that the trial court erred in not finding that the partnership was dissolved on July 15, 1999, and in finding that they had failed to sustain their burden of proving the affirmative defense of accord and satisfaction. On cross-appeal, MRLP and IN Home assert that the trial court abused its discretion in allowing Sedona and Wolf to raise the affirmative defense of release for the first time on the day of the trial. Finding no error, we affirm.

### FACTS

On April 29, 1993, Mesa Limited Partnership ("Partnership") was formed through a Limited Partnership Agreement ("the Agreement") by MRLP, as the sole limited partner, IN Home, as the sole non-managing general partner, and Sedona, as the sole managing general partner. The purpose of the partnership was to acquire, then develop and sell single-family residential lots in Merrillville. The land was to be developed in five phases as a subdivision with 392 lots.

As required by the Agreement, MRLP contributed $1.8 million to the Partnership. In return, MRLP was given first priority over Partnership distributions and was promised a series of preferential payments as each home site was sold, until distributions to it totaled $3.858 million ("the Minimum Return"). These preferential payments were required to total at least $1.8 million by December 31, 1996. The failure to do so placed the Partnership in default. The Agreement further stated that it was to be "governed by and interpreted in accordance with the laws of the State of Illinois." Appellee's App. p. 58.

Wolf owned at least 70% of Sedona. Before entering into the Agreement, Wolf executed a Guaranty by which he personally guaranteed the obligations of Sedona under the Agreement, for the benefit of MRLP and IN Home. The Guaranty provided that if the Partnership had not distributed at least $1.8 million to MRLP on or before April 30, 1997, four months after the Preferential Payments were due under the Agreement, then all amounts payable to MRLP and IN Home would be paid by Wolf. The Guaranty also provided that it was to be governed by and interpreted in accordance with the laws of the State of Illinois.

The Partnership failed to distribute $1.8 million to MRLP by December 31, 1996. By a letter dated January 7, 1997, MRLP declared a default and issued a notice of default pursuant to Paragraph 16 of the Agreement. Neither The Partnership nor Sedona nor Wolf thereafter distributed funds to MRLP. Nevertheless, the Partnership continued business.

On several occasions in 1998 and 1999, Wolf and H. Bruce McClaren, President of MRLP, discussed the deteriorating financial circumstances of the Partnership and the failure of Sedona and Wolf to make the required distributions to MRLP. During one of these discussions in 1998, McClaren told Wolf that MRLP would be satisfied only if Wolf paid MRLP its original investment of $1.8 million. In response, Wolf proposed that he would syndicate the remaining land owned by the Partnership ("the Remainder") and use the syndication proceeds to satisfy McClaren's demand.

Wolf later reported that he was unable to do so. Later, on February 4, 1999, McClaren demanded that the Remainder be transferred to MRLP. Wolf made further proposals by letter on February 10, 1999. On April 6, 1999, Wolf again wrote McClaren. This letter assumed a transfer of the Remainder to MRLP, as demanded by McClaren, and set forth a basis for requiring MRLP to assume existing Partnership debt of $395,350. Specifically, Wolf stated:

> In exchange for a full release of the Guaranty and the withdrawal of the PC Partner from Mesa, we will be willing to sell the remaining lots in Phase 2, pay down the Citizens loan, complete the necessary development commitment, pay the related development expenses and close the Mesa venture.

Plaintiffs' Ex. 18. The letter concluded by saying, "Once you have had an opportunity to review the enclosed and our proposal, please feel free to contact me with any questions or comments." Plaintiff's Ex. 18. McClaren did not respond to this letter. On July 15, 1999, the Partnership deeded to MRLP the Remainder, consisting of approximately eighty acres that would have become Phases 3, 4, and 5 of the project.

MRLP and IN Home brought suit against Sedona and Wolf in Lake County, and, after a change of judge motion, the trial was venued in the Lake County Superior Court on March 12, 2001. MRLP and IN Home moved for summary judgment on July 29, 2002. After a hearing, the trial court granted partial summary judgment on December 10, 2002, finding that Sedona and Wolf were indebted to MRLP in the amount of $1.8 million as a matter of law by the Agreement and the Guaranty. However, the trial court found that there were issues of fact and law concerning the value of the Remainder, whether estoppel or waiver barred MRLP and IN Home's claims, and whether an accord and satisfaction had occurred. Thus, a bench trial on these issues was held on January 7 and 8, 2003. The trial court entered judgment for MRLP and IN Home on May 6, 2003, finding that the value of the Remainder was $1,095,000 as of July 5, 1999, and that Sedona and Wolf failed to prove the facts necessary to sustain the defenses of estoppel, waiver, accord and satisfaction, or release. The trial court noted that the defense of release was not pleaded or raised in pre-trial contentions, but, rather than strike the defense, the court found that a release was neither intended nor given. Sedona and Wolf now appeal.

## DISCUSSION AND DECISION

### I. Affirmative Defenses

Wolf and Sedona argue that the trial court erred in finding that they did not prevail based on their affirmative defenses. Specifically, they contend that the trial court must be reversed because they established the elements of accord and satisfaction.

#### A. Accord and Satisfaction

Inasmuch as Sedona and Wolf bore the burden of establishing all facts necessary to show that an accord and satisfaction occurred, they are appealing from a negative judgment by the trial court. On appeal from a negative judgment, we will affirm the trial court's decision unless it is contrary to law. *Autobanc Corp. v. Hodges Towing Serv.*, 793 N.E.2d 248, 249 (Ind. Ct.App.2003). In determining whether the judgment is contrary to law, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We will consider the evidence in a light most favorable to the party prevailing at the trial court, and we will reverse the judgment only if the evidence leads to but one conclusion

and the trial court reached the opposite conclusion. *Id.* We will affirm if there is substantial evidence of probative value to support the judgment on any legal theory. *Id.*

■ Under Illinois law[1], an accord and satisfaction is a contractual arrangement under which a creditor agrees to accept partial payment from a debtor in full satisfaction of an unliquidated claim. *Kreutz v. Jacobs*, 39 Ill.App.3d 515, 349 N.E.2d 93 (1973). In order to prove an accord and satisfaction, the following elements must be shown:

1.  there must be a bona fide or honest dispute. *Gord Indus. Plastics., Inc. v. Aubrey Mfg., Inc.* [103 Ill.App.3d 380, 59 Ill.Dec. 160], 431 N.E.2d 445, 448 (1982);

2.  the sum in dispute must be unliquidated. *Id.;*

3.  there must be consideration. *W.E. Erickson Constr., Inc. v. Congress–Kenilworth Corp.* [132 Ill.App.3d 260, 87 Ill.Dec. 536], 477 N.E.2d 513, 520 (1985);

4.  there must be a meeting of the minds with the intent to compromise. *Id.;* and

5.  there must be execution or performance of the agreement. *Id.*

Furthermore, there is no bona fide dispute where it is clear what amount is owed and the dispute centers on whether the debt is owed at all. *Gord,* 59 Ill.Dec. 160, 431 N.E.2d at 448.

■ The evidence shows that there was no bona fide dispute. The trial court found in its Partial Summary Judgment that the Agreement provided for payment by the Partnership to MRLP of the Minimum Return of $3.858 million. The amount owed by Wolf and Sedona to MRLP and IN Home under the Agreement was not in dispute at the trial, and, therefore, Wolf and Sedona failed to establish this element of accord and satisfaction.

Moreover, there was no meeting of the minds with the intent to compromise. Wolf testified that he intended the transfer of the Remainder to merely offset his obligations under the Guaranty rather than to satisfy the debt entirely.

Q  And continuing throughout Page 72, do you see that you said, "However"— I'm looking at Line 5—"that a value needed to be determined for the residual acreage."

A  Yes.

. . . .

Q  Okay. And my question, Line 7: "And why did you think it was necessary to determine a value . . . ?"

And you responded, "Because there was a guarantee hanging out there." Right?

A  Yes.

Q  And I then said at Line 12, "And I realize this seems a little simplistic, I want the record to be clear, why is it important that a value be associated with the real estate?"

---

1.  As indicated above, the Agreement calls for the application of Illinois law. We note, however, that Illinois law regarding accord and satisfaction is substantially similar to Indiana law, which requires that: (1) there is a good faith dispute, *Gearhart v. Baker*, 393 N.E.2d 258, 260 (Ind.Ct.App.1979); (2) the sum in dispute is not liquidated, *id.;* (3) there is consideration, *Blankenship v. McKay*, 534 N.E.2d 243 (Ind.Ct.App.1989); (4) there is a meeting of the minds or evidence that the parties intended to agree to an accord and satisfaction, *Fifth Third Bank of Southeastern Indiana v. Bentonville Farm Supply, Inc.*, 629 N.E.2d 1246, 1249 (Ind.Ct.App.1994); and (5) there is a performance of the contract, *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind.Ct.App.1994).

And at Line 15, you answered, "As an offset to the obligation owed." Correct?

A  Correct.

Q  Okay. And we continue through Lines 16 and 25, and I'd like you to look particularly at Line 20, in which I ask you, "... [Y]ou expected that conveyance to offset your personal guarantee, to the extent of the value of the land?"

And you answered, "That's correct." True?

A  Correct.

Tr. p. 105–06.

Additionally, there is no evidence that MRLP and IN Home ever considered the transfer of the Remainder to be an accord and satisfaction of Wolf's Guaranty. The only evidence that this was even discussed comes from a single sentence in Wolf's April 6, 1999 letter, in which he proposes that the transfer of the Remainder act as a release of his Guaranty. The letter specifically requested McClaren to contact Wolf, but McClaren never responded to the proposal. Thus, there was no meeting of the minds with regard to an accord and satisfaction of Wolf's Guaranty. In light of the above, we cannot say that the trial court erred in finding that Wolf and Sedona failed to prove an accord and satisfaction.

### B.  Equitable Estoppel

Notwithstanding the fact that the issue stated on appeal only raises the question of whether an accord and satisfaction occurred, Wolf and Sedona advance an argument in their appellate brief that the trial court improperly found that they did not establish the elements of equitable estoppel. Inasmuch as Wolf and Sedona bore the burden of persuasion on this affirmative defense, we also review this argument under the negative judgment standard of review.

■  To establish equitable estoppel under Illinois law[2], the party claiming estoppel must demonstrate that:

1.  the other person misrepresented or concealed material facts;

2.  the other person knew at the time he or she made the representations that they were untrue;

3.  the party claiming estoppel did not know that the representations were untrue when they were made and acted upon;

4.  the other party intended or reasonably expected that the other party claiming estoppel would act upon the representations;

5.  the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and

6.  the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the proof thereof.

*Geddes v. Mill Creek Country Club, Inc.*, 196 Ill.2d 302, 256 Ill.Dec. 313, 751 N.E.2d 1150, 1157 (2001).

**2.**  We note that Illinois law here is substantially similar to Indiana law. Under Indiana law, "[t]he elements of equitable estoppel are: (1) a representation or concealment of a material fact, (2) made by a person with knowledge of the fact and with the intention that the other party act upon it, (3) to a party ignorant of the fact, (4) which induces the other party to rely or act upon it to his detriment." *Clark v. Crowe*, 778 N.E.2d 835, 840 (Ind.Ct.App.2002). Additionally, the party to whom the representation was made must have relied on or acted on it to his prejudice. *Ebersol v. Mishler*, 775 N.E.2d 373, 378 (Ind. Ct.App.2002).

Wolf and Sedona do not argue that MRLP or IN Home made any untrue representations. Instead, they contend that by MRLP and IN Home's silence, they consented to the full satisfaction of the obligation. The thrust of Wolf and Sedona's argument is that the Agreement gave MRLP a duty to speak. However, Wolf and Sedona do not cite to any provision of the Agreement that requires such a duty. Neither do they direct us to any Illinois law that would bestow such a duty upon MRLP and IN Home. Moreover, the only apparent citation that could lead us to this duty to speak is to a deposition that is not even included in the record. Wolf and Sedona have failed to establish that any misrepresentations were made to them.

Furthermore, there is no evidence that Wolf and Sedona reasonably relied upon any representation or that they were prejudiced by reliance on their part. Over the course of two years, the partners discussed numerous potential resolutions to the circumstances facing the Partnership, and Wolf's proposal for his own personal release was but one of many concepts presented. It was not reasonable for Wolf to rely upon McClaren's lack of response to Wolf's self-serving proposal for his own personal release when McClaren never expressed assent to the proposal. Moreover, even if Wolf and Sedona had reasonably relied upon a representation, they were not prejudiced. MRLP agreed to take title to the Remainder and to assume $395,350 of the Citizens Financial Development loan. Had Wolf not transferred the Remainder to MRLP, he would have owed MRLP $3.858 million and Citizens Financial the unpaid balance of the development loan under his personal Guaranty to it, while still being unable to develop or sell the Remainder because of a lack of available funds. Under these circumstances, the evidence shows that Wolf and Sedona benefited from the transfer rather than

being prejudiced. In light of the above, we cannot say that the trial court erred in finding that Wolf and Sedona failed to establish the elements of equitable estoppel.

## II. Termination of the Partnership

Wolf and Sedona then argue for the first time on appeal that the trial court erred as to when the Partnership terminated. Specifically, they contend that the dissolution of the Partnership occurred on July 15, 1999, and that this operated to bar MRLP and IN Home from bringing an action based upon the Agreement. However, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.*, 764 N.E.2d 647, 651 (Ind.Ct.App.2002). The only issues before the trial court were the value of the Remainder, whether estoppel or waiver barred MRLP and IN Home's claims, and whether an accord and satisfaction occurred. Wolf and Sedona did not argue that the Agreement itself barred the suit, and, thus, this claim of error is waived.

## III. Release

Finally, MRLP and IN Home argue in their cross-appeal that the trial court erred by allowing Wolf and Sedona to raise the affirmative defense of release. Specifically, they contend that it was improper to allow Wolf and Sedona to raise that defense on the day of trial. Inasmuch as the trial court ruled against Wolf and Sedona, we need not expend judicial resources in discussion of the merits of a defense that did not prevail at trial.

## CONCLUSION

In light of the disposition of the above issues, we find that the trial court did not

err in determining that Wolf and Sedona did not establish the defenses of accord and satisfaction or equitable estoppel. We further find that Wolf and Sedona waived their argument regarding the Agreement barring suit, and that MRLP and IN Home have no cause to complain of the defense of release being introduced the day of the trial.

The judgment of the trial court is affirmed.

NAJAM, J., and MAY, J., concur.