# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-2752

JOHNNIE SIMS-MADISON,

*Plaintiff-Appellant,*

*v.*

INLAND PAPERBOARD AND PACKAGING,
INC. (f/k/a INLAND CONTAINER CORP.),

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 01-125-C-Y/H—**Richard L. Young**, *Judge.*

ARGUED MAY 19, 2004—DECIDED AUGUST 11, 2004

Before CUDAHY, RIPPLE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Johnnie Sims-Madison is an African-American woman who was employed at Inland Paperboard and Packaging's Evansville, Indiana, plant until early 2000, when she was fired for fighting with another employee. Sims-Madison brought a Title VII action, and the district court granted summary judgment to Inland. At the same time, the district court also said that it was enforcing a purported settlement agreement the parties had previously reached. Sims-Madison appeals, and we vacate and remand.

## I.  BACKGROUND

Sims-Madison and a co-worker, Mike Faver, were fired for fighting in January 2000. The Paper, Allied-Industrial, Chemical and Energy Workers International Union (the "Union"), which represented both employees under a collective bargaining agreement, immediately filed grievances protesting their terminations. The following month, Sims-Madison filed a charge with the EEOC alleging racial and gender discrimination and retaliation by Inland. She also hired attorney Kevin Kinkade to represent her.

In December 2000, while Sims-Madison and Inland were participating in the EEOC's mediation program, Kinkade sent the mediator a letter. This letter, which is the settlement agreement,[1] stated:

> This letter serves to confirm that my client, Johnnie Sims Madison, has agreed to the following:
>
> 1)  She will give up arbitration of her termination;
>
> 2)  She will give up her EEOC Charge and not file any additional charges for any conduct which predates the Agreement;
>
> 3)  She will agree that she will not be reinstated and cannot apply for re-employment with the company; and
>
> 4)  She will execute a proper and appropriate release of claims.

In exchange, Kinkade wrote that Inland would pay Sims-Madison $30,000. William Hewett, an in-house attorney for Inland, also received a copy of the letter; on the letter below

---

[1]  For ease of reference, we refer to this letter as the "agreement" even though its validity is disputed.

Kinkade's signature he handwrote "Agreed William D. Hewett 12/8/00" and returned the letter to Kinkade. Sims-Madison first saw this letter when Kinkade provided her with a copy a few days after he had sent it. Upon reading the letter, Sims-Madison immediately told Kinkade that she had never authorized him to settle the pending arbitration of her union grievance, as provided by the first point of the agreement. Accordingly, she refused to comply with the fourth point of the agreement and sign a release. Two months later, Hewett sent Kinkade a letter in which he wrote that Inland believed it had an enforceable agreement with Sims-Madison. Hewett's letter stated that Inland expected her to sign the release, and that it would pay her as soon as she did so. Sims-Madison again refused to sign the release and has continued to refuse ever since. Accordingly, Inland has never paid her the $30,000.

Despite the first point of the agreement that purported to drop Sims-Madison's union grievance, the Union and Inland proceeded in February 2001 to arbitrate the grievances concerning Sims-Madison's and Faver's terminations. In May, the arbitrator reduced both terminations to 60-day suspensions and awarded both employees backpay and benefits dating back to January 2000 (with the exception of the suspension period). Inland reinstated both employees, but paid backpay and benefits only to Faver. In July 2001, Sims-Madison (who had returned to work) sued Inland for firing her in January 2000, alleging that the company's actions were motivated by racial and gender discrimination and retaliation.

In its answer to Sims-Madison's complaint, Inland pleaded the affirmative defense of accord and satisfaction. Inland later moved for summary judgment on a number of grounds, and in November 2002 the district court granted Inland's motion solely based on accord and satisfaction, finding that a "valid, binding and enforceable settlement agreement was reached." The court also stated that it "enforces those

portions of the settlement agreement consistent with the authority Plaintiff bestowed upon Mr. Kinkade."

Eight days after the district court issued its order, Inland fired Sims-Madison for a second time. Inland claims that the district court's enforcement of the agreement, specifically its third point—which provided that Sims-Madison would not be reinstated and could not apply for re-employment—authorized it to fire her. Sims-Madison's second discharge prompted the Union to file a separate suit[2] against Inland claiming that Inland illegally violated the arbitrator's award by refusing to pay her the backpay and benefits, and by firing her for the same incident for which the arbitrator had ordered her reinstated. The Union's lawsuit is not before us, and we express no opinion on its merits.

Sims-Madison then moved under Fed. R. Civ. P. 59(e) to alter or amend the judgment. The district court denied the motion, but noted that it had misunderstood the facts when it issued its original order. Specifically, the court said it originally believed that Inland *had* paid Sims-Madison the agreed-upon $30,000, and also that it had been unaware of the arbitration proceeding. Both of these facts, the order said, "should have been brought to the court's attention prior to the court's judgment."

## II.  ANALYSIS

Sims-Madison appeals (1) the district court's enforcement of the settlement agreement, (2) the grant of summary judgment for Inland, and (3) the denial of her Rule 59(e) motion.

---

[2] *Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. Inland Paperboard and Packaging, Inc.*, No. 1:03-CV-0741SEB-VSS, is presently pending in the Southern District of Indiana.

A.  Standard of Review

We review the grant of summary judgment de novo. *Lang v. Ill. Dep't of Children & Fam. Servs.*, 361 F.3d 416, 418 (7th Cir. 2004). We review for an abuse of discretion both the enforcement of the settlement agreement, *Hakim v. Payco-Gen. Am. Credits, Inc.*, 272 F.3d 932, 935 (7th Cir. 2001), and the denial of Sims-Madison's Rule 59(e) motion, *Hayes v. Potter*, 310 F.3d 979, 980 (7th Cir. 2002).

B.  Enforcement of the Settlement Agreement

Sims-Madison argues that the district court erred by enforcing the settlement agreement because Inland never requested enforcement, either in its motion for summary judgment or at any other time during the proceedings in the district court. Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). All of the pertinent events in this case occurred in Indiana, and the parties agree that Indiana law controls. In its motion for summary judgment, Inland asserted accord and satisfaction—an affirmative defense, *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994)—as one possible ground for granting the motion. But by enforcing the settlement agreement, the court ordered specific performance of the terms of the agreement, and specific performance is a contractual remedy rather than an affirmative defense. *See Wagner v. Spurlock*, 803 N.E.2d 1174, 1180 (Ind. Ct. App. 2004). Although Inland had referenced the agreement when it moved for summary judgment on the ground of accord and satisfaction, the only relief it ever requested in that motion was the dismissal of Sims-Madison's Title VII action—it never asked the court to authorize her termination under the contract's terms.

The district court acted *sua sponte* when it went beyond the relief Inland requested and ordered enforcement of the

agreement. *Sua sponte* judgments are disfavored. *See S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 677-78 (7th Cir. 2002). We have cautioned district courts that they should provide litigants with notice and an opportunity to present evidence when they are considering entering judgment *sua sponte*. *Tranzact Techs., Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 549 (7th Cir. 2004). Although Sims-Madison had notice of the accord and satisfaction ground of Inland's motion, she was unaware of the possibility that the district court might enforce the agreement and thereby order anything other than the dismissal of her Title VII suit. *Cf. R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 650 (7th Cir. 2003) (fact that plaintiff had itself moved for summary judgment "does not mean that it was fairly appraised of the ultimate basis for the district court's reasoning" in granting summary judgment for the defendant).

In opposition to Inland's motion for summary judgment, Sims-Madison argued that the agreement was not binding (and hence there was no accord and satisfaction) because she never authorized Kinkade to settle the union grievance. *See Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1301 (Ind. 1998) (attorney must be authorized to settle or act pursuant to inherent agency power before he can bind his client to a settlement agreement). She also argued that in any event she could not have authorized Kinkade to settle the grievance because the National Labor Relations Act provides that a unionized employee can only drop a grievance without union intervention under certain conditions, and she claims those conditions were not met here. *See* 29 U.S.C. § 159(a); *Truserv Corp. v. Nat'l Labor Relations Bd.*, 254 F.3d 1105, 1119 (D.C. Cir. 2001); *Shoppers Food Warehouse Corp. v. United Food & Comm. Workers Local 400*, 315 N.L.R.B. 258, 262 (1994). In response to Sims-Madison's arguments, the district court refused to enforce the first point of

the agreement. *See Harbour v. Arelco, Inc.*, 678 N.E.2d 381, 385 (Ind. 1997) (court can eliminate illegal provision and enforce remainder of contract if it can do so without frustrating the contract's basic purpose).

But the district court's resolution is insufficient because the third provision of the agreement prohibiting Sims-Madison's reinstatement seemingly conflicts with the arbitration award ordering her reinstatement. The existence of the arbitration award renders ambiguous the otherwise clear language of the third point of the agreement. Although a district court has the inherent authority to summarily enforce a settlement agreement, *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996); *Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995), when the existence or terms of a settlement agreement are in dispute, the district court should hold an evidentiary hearing to resolve the disputes or ambiguities, *id.* at 664. Here, the agreement's term concerning Sims-Madison's reinstatement is in tension with the arbitrator's award. The validity of the third point is further in doubt because federal courts generally must enforce an arbitration award that results from a proceeding pursuant to a collective bargaining agreement. *Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir. 1997). Challenges to an arbitrator's award must be made within 90 days or they are waived. *See* 9 U.S.C. § 12; *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 429 (7th Cir. 1998). Inland never challenged the arbitration award in federal court, but its position now is that the district court's enforcement of the non-reinstatement provision of the agreement overrides the arbitration award ordering Sims-Madison's reinstatement.

The district court, however, did not consider any of these issues because it enforced the settlement agreement *sua sponte* without giving Sims-Madison an opportunity to raise them before it issued its order. This was an abuse of discretion. As the district court observed, Sims-Madison

first challenged the third provision of the agreement in her motion under Fed. R. Civ. P. 59(e). But Sims-Madison had no reason to challenge the reinstatement provision sooner because at the time Inland moved for summary judgment, she had already been reinstated and Inland had never suggested that it intended to fire her a second time. The district court never gave Sims-Madison notice that it was contemplating enforcement of the agreement or an opportunity to present evidence against its enforcement, *see Tranzact Techs., Ltd.,* 366 F.3d at 549, and she raised her arguments against enforcement at the first opportunity she had to do so. Accordingly, because the district court failed to consider the possible impact of the arbitrator's award on the validity of the reinstatement provision, we vacate the enforcement of the agreement.

C.  Accord and Satisfaction

Sims-Madison also challenges the grant of summary judgment in favor of Inland because she claims that there was never an accord and satisfaction. Accord and satisfaction is an affirmative defense that must be specifically pleaded and proven by the party raising it. *Mominee*, 629 N.E.2d at 1282. An "accord" is an express contract by which the parties agree to settle a dispute, and a "satisfaction" is the parties' performance of their contractual obligations. *Reed v. Dillon*, 566 N.E.2d 585, 590 (Ind. Ct. App. 1991). To prove an accord and satisfaction, a party must establish that: (1) there is a good faith dispute, (2) the disputed sum is unliquidated, (3) there is consideration, (4) the parties had a meeting of the minds with the intent to settle the dispute, and (5) the contract was performed. *Sedona Dev. Group, Inc. v. Merrillville Rd., LP*, 801 N.E.2d 1274, 1278 n.1 (Ind. Ct. App. 2004). Inland must meet its burden of proof "on *each of the elements* of the defense." *Reed*, 566 N.E.2d at 590 (emphasis added).

Sims-Madison correctly contends that Inland failed to meet its burden of proof on the defense. Inland did not even mention any of the elements of the defense in either its initial memorandum or its reply memorandum in support of its motion for summary judgment. The district court, for its part, also did not discuss any of the elements in its order. Having at least nominally asserted that there was an accord and satisfaction, Inland bore the burden of proving the defense, *Mominee*, 629 N.E.2d at 1282, and it failed to meet that burden.

Furthermore, regardless of the deficiencies in Inland's pleadings or any question about the validity of the agreement, the record makes clear that Inland has never paid Sims-Madison anything, and accordingly it has not performed its obligations under the contract, as required to establish an accord and satisfaction. *See Sedona Dev. Group, Inc.*, 801 N.E.2d at 1278 n.1. Inland responds with the misplaced argument that it was excused from tendering performance when Sims-Madison repudiated the agreement by refusing to sign the release. Although Inland was allowed to refuse performance once it knew that Sims-Madison had repudiated the contract, *see Eden United, Inc. v. Short*, 573 N.E.2d 920, 929 (Ind. Ct. App. 1991), its right to refuse performance is irrelevant to the question of whether an accord and satisfaction was reached. Inland could not establish satisfaction simply by promising to perform its obligations if Sims-Madison performed hers—it was required to prove that it *did* perform, *see Chesak v. N. Ind. Bank & Trust Co.*, 551 N.E.2d 873, 875 (Ind. Ct. App. 1990), not simply that it was willing to perform.

Inland did not meet its burden to prove that there was an accord and satisfaction, and the grant of summary judgment in its favor is vacated.

D.  Sims-Madison's Rule 59(e) Motion

Finally, Sims-Madison appeals the denial of her motion under Fed. R. Civ. P. 59(e). In light of our disposition of the other issues, we need not address this argument.

### III.  CONCLUSION

The order enforcing the settlement agreement, and the grant of summary judgment in Inland's favor are VACATED, and this case is REMANDED to the district court for further proceedings consistent with this opinion.


A true Copy:

       Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*