FILED

Oct 24 2017, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Jeffrey B. Kolb
Charles E. Traylor
Kolb Roellgen & Kirchoff LLP
Vincennes, Indiana

ATTORNEYS FOR APPELLEES

William M. Olah
Sarah L. Wachala
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Judy K. Harris, Personal
Representative of the Estate of
Gary W. Stahl,

*Appellant-Defendant,*

v.

Beth Ann Davis and
Amy L. Westerman,

*Appellee-Plaintiff.*

October 24, 2017

Court of Appeals Case No.
77A01-1612-PL-2773

Appeal from the Sullivan Circuit
Court

The Honorable Robert E. Hunley
II, Judge

Trial Court Cause No.
77C01-1609-PL-437

**Robb, Judge.**

# Case Summary and Issue

[1] Judy Harris, as personal representative of the Estate of Gary Stahl ("Gary's Estate"), appeals the trial court's judgment in favor of Beth Davis and Amy Westerman ("Beth and Amy"). Gary's Estate raises four issues for our review, one of which we find dispositive: whether the trial court's judgment is clearly erroneous. Concluding the trial court's judgment is clearly erroneous, we reverse its order in favor of Beth and Amy.

# Facts and Procedural History

[2] In 1991, William Lawrence Stahl created the Revocable Trust Agreement of William Lawrence Stahl ("William's Trust"). From 1991 until his death in 2011, William amended his trust twice. The latest amendments to William's Trust provided that, upon William's death, his children, Gary Stahl and Rita Springer, were each to receive one-half of the assets of William's Trust. Rita would receive one-half of William's Trust's assets outright; however, Gary's portion was to be held in a separate residuary trust during Gary's lifetime. William also amended his trust to appoint Gary's daughters, Beth and Amy, as co-successor trustees of William's Trust. Beth and Amy are also co-trustees of the residuary trust. William's Trust further provided Gary was not to receive any of the principal of the residuary trust, but could only receive income generated by its assets. Upon Gary's death, the residuary trust was to be distributed in equal parts to Beth and Amy.

[3] On numerous occasions before William's death, Gary received money from William's Trust in return for a promise to repay the money with interest. William died in May of 2011. Upon his death, his family began administering his estate and preparing to distribute his assets in the manner provided in William's Trust. In June of 2011, Beth and Amy, as co-trustees of William's Trust, and Gary signed a Settlement Statement memorializing the total amount Gary owed from his dealings with his father. The Settlement Statement provides,

> I, Gary W. Stahl, acknowledge that I owe the Trust of my father, William Lawrence Stahl (deceased May 2, 2011) for funds advanced to me in the amount of Eighty Thousand Dollars ($80,000.00) to be deducted from my share of the William Lawrence Stahl Revocable Trust Agreement dated November 15, 1991.

Appellant's Appendix, Volume 2 at 62.[1]

[4] On February 10, 2012, Gary, Rita, Beth, and Amy, signed a Family Settlement Agreement in an attempt to terminate William's Trust. The Family Settlement Statement provides, in relevant part,

> Rita Springer . . . acknowledges that Gary Stahl owes [William's Trust] . . . the total sum of $80,000 only, and Gary Stahl . . . acknowledges/consents to the transfer of the first $80,000 of

---

[1] Rita testified because there was a difference of opinion on the exact amount received by Gary, $80,000 was a compromise between the parties on what Gary "[h]ad already received" from William's Trust. Transcript, Volume 1 at 44.

financial assets from [William's Trust] . . . to Rita Springer, and to the transfer of the $80,000 obligation owed by Gary Stahl to the Residuary Trust f/b/o Gary Stahl under [William's Trust] . . . .

*Id.* at 65-66. The Family Settlement Statement also includes a step-by-step process for liquidating William's Trust. Steps 1 and 2 of the process involve transactions between the parties not relevant to this appeal. However, Step 3 states, in relevant part,

Result at this point: [William's Trust] owns half interest in N 40 of 100 ac[res] . . . and 100% of S 60 ac[res] plus financial assets (that have been reduced by the $80,000 paid to Rita to off-set Gary's debt (that [debt] having been distributed to Gary's Trust— Gary then owes his trust, not Rita, that $80,000) . . . .)[.]

*Id.* at 69.

[5] On February 20, 2016, Gary died. Thereafter, Judy Harris, Gary's personal representative, filed a petition to probate Gary's will. Gary's will disinherited Beth and Amy. On April 7, 2016, Beth and Amy, as co-trustees of Gary's residuary trust, filed a verified statement of claim against Gary's Estate claiming their father's estate owed $80,000 to Gary's residuary trust. The verified statement of the claim alleged as follows:

2. The amount of indebtedness due claimant from the decedent's estate is $80,000.00 plus accrued interest at the rate of 8% annum from and after May 2, 2011 - principal and interest aggregating $111,316.16 as of March 23, 2016 . . . .

> 3. The consideration for this debt is: $80,000.00 in monies loaned to decedent as evidenced by that certain June 21, 2011 Settlement Statement signed by Gary W. Stahl . . . which debt was distributed to claimant pursuant to that certain Family Settlement Agreement dated February 10, 2012 . . . .

*Id.* at 46.

[6] On October 27, 2016, the trial court held a hearing on Beth and Amy's claim against Gary's Estate. At the hearing, Beth and Amy introduced into evidence three promissory notes executed by Gary in favor of William's Trust. Each promissory note includes a promise to repay the borrowed amount plus interest at a rate of five percent per annum to William's Trust. *See* Plaintiffs' Exhibits G, O, & P. Beth and Amy also introduced a document labeled "Notes on Gary & Connie to Trusts" created by William detailing thirteen different dates on which Gary received money from either William's Trust or the trust of William's wife, Ruth. *See* Plaintiffs' Exhibit Q. In addition to these documents, Beth and Amy also submitted an Inheritance Tax Return ("Tax Return") filed by Gary and Rita as personal representatives of William's estate. The Tax Return lists, as an asset of William's estate, a "loan owed to the trust at date of death from Gary Stahl Settlement Statement" for $80,000. Appellant's App., Vol. 2 at 159. The trial court also considered a letter written by William to Gary in January of 2006. In the letter, William documented the loans received by Gary. William wrote,

> As you know, you and Connie executed a Promissory Note in favor of [William's Trust] dated July 1, 1997, the Ruth Stahl

Revocable Trust dated July 1, 1997, a twenty-five thousand dollar ($25,000.00) Promissory Note to the Ruth Stahl Revocable Trust dated April 6, 1996, and a twenty-five thousand dollar ($25,000.00) Promissory Note to [William's Trust] dated April 6, 1996. All four of the above Notes provided for interest at the rate of seven and one-half percent (7.5%) per annum.

Plaintiffs' Exhibit F.

[7] Following the hearing, the trial court adopted, verbatim, Beth and Amy's proposed findings of fact and conclusions thereon and entered judgment in favor of Beth and Amy in the amount of $114,638.49. The trial court found and concluded in part as follows:

## I. Findings of Fact

1. William Lawrence Stahl ("William") was married to Ruth Lucille Stahl until her death. They were the parents of Gary W. Stahl (the decedent herein) and Rita Springer. William created [William's Trust] . . . on November 15, 1991. . . . William served as the sole trustee of William's Trust. William died testate, his Last Will and Testament having been admitted to probate in this Court . . . .

2. After William died, his granddaughters Beth Ann Davis and Amy L. Westerman became successor co-trustees of William's Trust . . . .

* * *

5. Following William's death, differences of opinion arose among the beneficiaries of William's Trust and Ruth's Trust. Multiple negotiable promissory notes and two (2) recorded mortgages signed by Gary Stahl were introduced into evidence which memorialize aggregate borrowings of $94,000.00 from William's Trust prior to 2010. Rita Springer testified that many more promissory notes from

Gary to William's Trust existed at the time of William's death than the number of such notes presented at trial (which carried an aggregate face amount of $94,000). Rita stated that all the existing promissory notes actually aggregated more than $94,000.00 face amount, but in order to move on and be able to distribute assets from William's Estate, William's Trust, and Ruth's Trust, all the interested parties entered into a compromise and agreed on June 21, 2011, via the Settlement Agreement, that despite all the prior notes/mortgages, Gary owed William's Trust only $80,000.00 as of the date of William's death (May 2, 2011)—the "Compromised Amount."

6. On May 26, 2011, Rita Springer and Gary Stahl had been authorized by Order of this Court to file an Indiana Inheritance Tax return in connection with the May 2, 2011 death of their father, William. On January 30, 2012, they signed and filed such an inheritance tax return showing a tax liability of $38,076.00. This return and the amount of tax due were approved by Order of this Court . . . .

* * *

8. Schedule E of that Inheritance Tax Return lists, as Item 12 thereon, the following asset of William's Trust:

Loan owed to the trust at date of death from Gary Stahl Settlement Statement . . . $80,000.00

* * *

11. [A] written Family Settlement Agreement was finalized among Gary Stahl, William's Trust, Ruth's Trust, Gary's Trust, the Estate of William, Rita Springer, and two (2) cousins of Gary and Rita Springer—wherein . . .

"[Rita Springer] acknowledges that Gary Stahl owes [William's Trust] . . . the total sum of $80,000 only, and Gary Stahl . . . acknowledges/consents to the transfer of the first $80,000 of financial assets from [William's Trust] . . . to Rita Springer, and to the transfer of the $80,000

obligation owed by Gary Stahl to the Gary's Trust f/b/o Gary Stahl under [William's Trust] . . . ."

12. Rita Springer's testimony made clear that the $80,000 owed by Gary mentioned in the Settlement Statement is the same $80,000 referred to in the Family Settlement Statement (and its Protocol). . . . Rita Springer first testified that once she received her $80,000.00 per . . . the Family Settlement Agreement, she believed Gary's $80,000 obligation to William's Trust was to be canceled, but she immediately recanted that testimony after she herself read [the Family Settlement Agreement]—realizing and then acknowledging/testifying, instead, that all the interested parties . . . had agreed that such $80,000 obligation was transferred to Gary's Trust . . . .

13. Gary Stahl, in his individual capacity, subscribed to the following joinder in the Family Settlement Agreement: ". . . I am signing below to evidence my agreement to the foregoing terms and the attached Protocol."

14. Step 1E of the Protocol that is part of the Family Settlement Statement reads, in pertinent part: "E. Distribute to Gary's Trust the $80,000 debt receivable owed by Gary."

* * *

17. No evidence of any kind was presented that William ever filed a gift tax return. An attorney (Robert E. Springer) who had performed legal services for William testified that (a) he had never prepared a gift tax return for William, and (b) with respect to the transactions where that attorney had prepared mortgages for William at William's request, William was adamant that the funds paid out by William's Trust were not gifts, but were to be repaid to William's Trust.

* * *

## II. Conclusions of Law

* * *

9. Estate is estopped from arguing that William's Trust is the real party in interest here because Gary admitted in the Family Settlement Agreement, via Gary's joinder therein, that pursuant to the provisions of . . . the Family Settlement Agreement, the right to receive payment of the $80,000.00 plus interest thereon was transferred from William's Trust to Gary's Trust.

For all of the above reasons and I.C. 30-4-3-20(a)(3), the Court enters judgment for Gary's Trust and against [Gary's] Estate in the amount of $80,000.00 plus $34,638.49 as 8% annum interest thereon from and after June 21, 2011 through the date hereof—for a total dollar amount of $114,638.49.

Appellant's App., Vol. 2 at 119-28. Gary's Estate now appeals.

# Discussion and Decision

[8] Gary's Estate argues there is insufficient evidence to support the trial court's judgment because the Settlement Statement is an accord and satisfaction for Gary's prior debts to William's Trust. It further alleges the Settlement Statement unambiguously states Gary was to satisfy his debt by permitting Rita to receive the first $80,000 from William's Trust. Therefore, once Rita received the first $80,000 from William's Trust, the accord was satisfied. Rebutting these arguments, Beth and Amy allege the Settlement Statement is ambiguous, requiring the consideration of extrinsic evidence to determine the parties' intent. Beth and Amy further allege the Settlement Statement, Family Settlement Statement, and extrinsic evidence demonstrate Gary is required to repay

$80,000 to William's Trust, and subsequently to Gary's residuary trust following the signing of the Family Settlement Agreement.

# I. Standard of Review

[9] The trial court entered findings of fact and conclusions thereon and our standard for reviewing a trial court's findings and conclusions is well-settled:

> When findings and conclusions thereon are made, we must determine if the trial court's findings support the judgment. We will reverse the trial court's judgment only when it is clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

*Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 863 (Ind. Ct. App. 2002) (internal citations omitted).[2]

---

[2] When a trial court adopts verbatim a party's proposed findings and conclusions, it does not alter our standard of review. *See Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003). However, the practice "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Id.* (citing *Prowell v. State*, 741 N.E.2d 704, 708-09 (Ind. 2001)). The critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. *In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005).

## II. Accord and Satisfaction

[10] Gary's Estate's first argument is the Settlement Statement constituted an accord and satisfaction for his prior debts to William's Trust. The trial court concluded Gary's Estate failed to prove its defense of accord and satisfaction. We agree there is an accord and satisfaction—but for different reasons than those asserted by Gary's Estate.

[11] An "[a]ccord and satisfaction is a method of discharging a contract, or settling a cause of action by substituting for such contract or dispute an agreement for satisfaction." *Daube and Cord v. LaPorte Cty. Farm Bureau Coop. Ass'n*, 454 N.E.2d 891, 894 (Ind. Ct. App. 1983). The term "accord" denotes an express contract between two parties by means of which the parties agree to settle some dispute on terms other than those originally contemplated, and the term "satisfaction" denotes performance of the contract. *Reed v. Dillon*, 566 N.E.2d 585, 590 (Ind. Ct. App. 1991). A party pleading the defense of accord and satisfaction has the burden of proving that fact. *Daube and Cord*, 454 N.E.2d at 894.

[12] Here, the money borrowed by Gary from William's Trust was certainly originally intended to be a loan.[3] Beth and Amy submitted into evidence three

---

[3] Gary's Estate also argues the trial court erred in considering evidence other than the Settlement Statement because the parol evidence rule prohibits the trial court from considering extrinsic evidence. Generally, where parties have reduced an agreement to writing and have stated in an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering extrinsic evidence for the purpose of varying or adding to the terms of the written contract. *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1035 (Ind. Ct. App. 1998), *trans. denied*.

promissory notes executed by Gary in favor of William's Trust, each of which included a promise to repay the borrowed amount plus interest to William's Trust. In addition to these documents, Beth and Amy submitted a letter written by William to Gary documenting several other promissory notes signed by Gary. Beth and Amy also offered the testimony of Robert Springer, William's attorney, who prepared mortgage documents for William when he distributed money from his trust to Gary. Springer testified that these transactions were intended to be loans, not gifts. *See* Tr., Vol. 1 at 23.

[13] Following William's death, the parties came together and compromised upon the amount owed by Gary to William's Trust. Although the disputed amount was allegedly much more than $80,000, the parties agreed Gary only owed that amount in order to be able to distribute and terminate William's Trust. Beth and Amy, as co-trustees of William's Trust, and Gary signed the Settlement Statement agreeing Gary only owed $80,000, and that amount was to be deducted from Gary's share of William's Trust. This settlement represented an accord for Gary's prior debts. *See Mominee v. King*, 629 N.E.2d 1280, 1283-84 (Ind. Ct. App. 1994).

---

However, the existence of an integration clause does not control the question of whether a writing was intended to be a completely integrated agreement. *Id.* Here, the Settlement Statement does not contain an integration clause and Gary's Estate makes no argument the Settlement Statement was intended to be a completely integrated agreement. Further, the fact Gary, Beth, Amy, and Rita signed a subsequent agreement, the Family Settlement Statement, demonstrates the agreement was not integrated and the parol evidence rule does not apply.

[14]     However, contrary to Gary's Estate's view, the Settlement Statement did not "satisfy" or perform the contract. *See Reed*, 566 N.E.2d at 590 (noting "satisfaction" denotes performance of the contract). Although the Settlement Statement provided the manner in which it was to be satisfied, it did not actually perform the contract. Rather, the Settlement Statement only represented a compromise on what Gary "[h]ad already received." Tr., Vol. 1 at 44. Following this agreement, Rita testified there were still "ongoing discussion[s]" on *how* to distribute assets from William's Trust to ensure Rita and Gary each received fifty percent of the assets. *Id.* Several months later, Gary, Rita, Beth, and Amy entered into the Family Settlement Agreement. The Family Settlement Agreement provides, in relevant part,

> Rita Springer . . . acknowledges that Gary Stahl owes [William's Trust] . . . the total sum of $80,000 only, and Gary Stahl . . . acknowledges/consents to the transfer of the first $80,000 of financial assets from [William's Trust] . . . to Rita Springer, and to the transfer of the $80,000 obligation owed by Gary Stahl to the Residuary Trust f/b/o Gary Stahl under [William's Trust] . . . .

*Id.* at 65-66. The Family Settlement Statement, and the transactions that occur pursuant to it, will constitute performance of the accord. The question becomes, what did the parties intend performance to require. In Gary's Estate's view, the accord was satisfied when Rita received the first $80,000 from William's Trust to off-set from what Gary had already received from the trust. By contrast, Beth and Amy argue performance requires Gary's Estate to pay $80,000 to his residuary trust.

# III. The Parties' Intent

[15] Our standard of review for settlement agreements is well-established:

> Settlement agreements are governed by the same general principles of contract law as any other agreement. The interpretation and construction of a contract is a function for the courts. If the contract language is unambiguous and the intent of the parties is discernible from the written contract, the court is to give effect to the terms of the contract. A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation; however, the terms of a contract are not ambiguous merely because the parties disagree as to their interpretation. When the contract terms are clear and unambiguous, the terms are conclusive and we do not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions.

*Fackler v. Powell*, 891 N.E.2d 1091, 1095-96 (Ind. Ct. App. 2008) (internal citations omitted), *trans. denied*.

[16] As previously noted, the evidence presented by Beth and Amy demonstrates the money borrowed by Gary was originally intended to be a loan which Gary was to repay. Beth and Amy presented ample evidence at trial, including promissory notes, a letter, and testimony from William's lawyer indicating the monies borrowed by Gary were loans. Following William's death, Beth and Amy, as co-trustees of William's Trust, and Gary signed the Settlement Statement compromising on the amount owed by Gary. The Settlement Statement provides,

> I, Gary W. Stahl, acknowledge that I owe the Trust of my father, William Lawrence Stahl (deceased May 2, 2011) for funds advanced to me in the amount of Eighty Thousand Dollars ($80,000.00) to be deducted from my share of the William Lawrence Stahl Revocable Trust Agreement dated November 15, 1991.

Appellant's App., Vol. 2 at 62. The Settlement Statement clearly and unambiguously states the parties only intended Gary to repay $80,000 of the amount he borrowed, and that amount was to be deducted from his fifty percent share of William's Trust. Regardless of the parties' original intent, Beth and Amy, consistent with their power as co-trustees, signed the Settlement Statement indicating they agreed to this interpretation. *See* Appellant's App., Vol. 2 at 141 (noting the trustee of William's Trust has authority to "compromise, settle or adjust any claim or demand by or against the trust . . . .")

[17] Several months later, Gary, Rita, Beth, and Amy signed the Family Settlement Agreement giving effect to the Settlement Statement. The Family Settlement Agreement provides,

> Rita Springer . . . acknowledges that Gary Stahl owes [William's Trust] . . . the total sum of $80,000 only, and Gary Stahl . . . acknowledges/consents to the transfer of the first $80,000 of financial assets from [William's Trust] . . . to Rita Springer, and to the transfer of the $80,000 obligation owed by Gary Stahl to the Residuary Trust f/b/o Gary Stahl under [William's Trust] . . . .

Appellant's App., Vol. 2 at 65-66. Step 3 of the Protocol to the Family Settlement Agreement states, in relevant part,

> Result at this point: [William's Trust] owns half interest in N 40 of 100 ac[res] . . . and 100% of S 60 ac[res] plus financial assets (that have been reduced by the $80,000 paid to Rita to off-set Gary's debt (that [debt] having been distributed to Gary's Trust— Gary then owes his trust, not Rita, that $80,000) . . . .)[.]

*Id.* at 69.

[18]     These agreements are certainly confusing and inartfully drafted. The Settlement Statement makes clear the parties intended Gary would repay $80,000 only, which was to be deducted from his share of William's Trust. In the Family Settlement Statement and its Protocol, language is added that indicates his obligation is transferred to his residuary trust. This language renders the settlements ambiguous as reasonable people could disagree on their meanings. *See INB Banking Co. v. Opportunity Options, Inc.*, 598 N.E.2d 580, 583 (Ind. Ct. App. 1992) (noting an ambiguity subject to at least three reasonable interpretations existed between two separate mortgage agreements), *trans. denied*. However, what is clear from the settlement agreements is Gary never intended to repay more than $80,000. Both settlement statements clearly indicate this intent. Further, Gary was to satisfy the settlement agreements by consenting to Rita receiving the first $80,000 of financial assets from William's Trust. At trial, Rita testified, "[t]he agreement was that . . . the Trust that was for the benefit of Gary Stahl was to receive $80,000.00 less. Based on the fact that he had already received it." Tr., Vol. 1 at 53. Moreover, the Protocol

clearly states the first $80,000 from William's Trust was paid to Rita to "off-set Gary's debt . . . ." Appellant's App., Vol. 2 at 69. A decision in favor of Beth and Amy would require Gary to repay twice the amount the parties intended.[4] Therefore, because the parties only intended for Gary to repay $80,000, and that intent was satisfied when Rita received the first $80,000 from William's Trust, we conclude Gary's Estate has met its burden of proving the defense of accord and satisfaction and the trial court erred in concluding otherwise.

# Conclusion

[19] Gary's Estate met its burden of proving the defense of accord and satisfaction and the trial court's judgment in favor of Beth and Amy is clearly erroneous. Accordingly, we reverse the trial court's order.

[20] Reversed.

Vaidik, C.J., and Bailey, J., concur.

---

[4] For example, assume the assets in William's Trust at William's death total $500,000. A requirement that Gary repay the $80,000 means the trust has a total of $580,000 to distribute and Gary and Rita should each receive $290,000. But, because Gary has already received $80,000, there is only $500,000 to distribute. Gary then consents to Rita receiving the first $80,000 from the trust; the amount remaining in the trust is $420,000. An equal division of $420,000 gives Gary and Rita $210,000 each. Rita has now received the $290,000 she originally should have received had Gary not borrowed money from the trust. Gary has now satisfied the parties' agreement that the $80,000 owed by him is "to be deducted from [his] share of [William's Trust]." Appellant's App., Vol. 2 at 62. A requirement Gary now pay another $80,000 means Gary is paying $160,000, twice the amount intended by the parties.